**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **DR. MICHAEL L. STERN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )       **CASE NO. 3:18-CV-807-WKW** |
| | ) |
| **DR. STEVEN LEATH, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## ANSWER

Defendants Leath, Hardgrave, Boosinger and Aistrup (collectively "Defendants") answer the Second Amended Complaint (Doc. 47) as follows:

## FIRST DEFENSE

Responding to the respective numbered paragraphs of the amended complaint, Defendants answer as follows:

1.      Denied.

2.      Denied that this Court has subject matter jurisdiction (see Docs. 11 and 18); denied that Defendants have violated any law or statute relative to Plaintiff; and denied that Plaintiff is entitled to any relief.

3.      Defendants are not aware of any conditions precedent to the filing of this action.

4.      Admitted.

5.      Defendants admit the first sentence of this paragraph, admit that Plaintiff is employed as an Associate Professor in the Department of Economics, and admit that Plaintiff served for several years as  Department Chair; otherwise denied.

6.      Admitted that Defendant Leath was President of Auburn University from June 1, 2017 through June 21, 2019; admitted that Plaintiff is and has been at all relevant times an Auburn employee; otherwise denied.

7.      Admitted that Defendant Hardgrave has been Provost and Senior Vice-President for Academic Affairs of Auburn University since January 1, 2018; otherwise denied.

8.      Admitted that Defendant Boosinger was Provost and Vice-President for Academic Affairs of Auburn University from June 22, 2012 to May 1, 2017; otherwise denied.

9.      Admitted that Defendant Aistrup has been Dean of Auburn University's College of Liberal Arts since September 1, 2013; otherwise denied.

10.      The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief."   Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that there was a relationship between Auburn and its College of Business and the Koch Foundation, but otherwise deny the allegations of this paragraph.*

11.      Denied.

12.      The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief."   Reserving all rights, Defendants answer this

_____

* Unless expressly stated otherwise, Defendants do <u>not</u> admit the accuracy of dates or time periods that appear in boldface before the text of certain paragraphs of the amended complaint, such as paragraphs 10 and 15.

paragraph as follows: Defendants admit there was an article in the named publication about the Koch Foundation; otherwise denied.

13.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief."  Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that Dr. Mary Ellen Mazey became Provost in February 2009; deny based on lack of knowledge or information what Mazey "believed," "was accustomed to," or "considered"; otherwise denied.

14.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: admitted that the Economics Department was relocated to the College of Liberal Arts ("CLA") and housed in a basement section of Haley Center, where the Department remained until 2017; admitted that Plaintiff's tenure application was processed through CLA and that is was not supported by the Provost; admitted that President Gogue, the ultimate decision-maker, granted tenure to Plaintiff; otherwise denied.

15.     Admitted that Plaintiff became Chair of the Economics Department in August of 2010; otherwise denied.

16.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s)

7626289.4

showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: admitted that, in her capacity as Faculty Athletics Representative, Dr. Boudreaux made a presentation to the University Senate on the date alleged, and that Plaintiff engaged with her relative to that presentation; otherwise denied.

17.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants deny the allegations regarding Dr. Steve Brown, based on a lack of knowledge or information; admit that Dean Aistrup sent an email to Plaintiff on February 5, 2014 that was subsequently mentioned in an article in the Chronicle; otherwise denied.

18.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: denied.

19.     Defendants admit that Defendant Aistrup discussed with Plaintiff the possibility of an externally-hired head for the Economics Department, and admit that Plaintiff was not interested in stepping down as Department Chair; otherwise denied.

20.     Defendants admit that Defendant Aistrup's email requested Plaintiff to keep the previous day's discussion between Plaintiff and the Dean's office; otherwise denied based on lack of knowledge or information.

21.     Defendants admit that Plaintiff's annual salary increase was 2%; otherwise denied.

22.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: denied based on lack of knowledge or information.

23.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that Dr. Boudreaux made a Senate presentation on the asserted date and that Plaintiff engaged with her during or following her presentation; otherwise denied.

24.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants deny the averments of the last sentence, and deny the remainder of the paragraph based on lack of knowledge or information.

25.     Defendants deny the allegations of this paragraph based on lack of knowledge or information.

26.     Defendants deny the allegations of this paragraph based on lack of knowledge or information.

27.     Defendants deny the allegations of this paragraph based on lack of knowledge or information.

28.     Defendants admit that an attorney for Plaintiff sent a "FOIA" request to Auburn, through General Counsel Armstrong, on or about the date alleged.

29.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants deny the second sentence of this paragraph, and deny the remaining averments based on lack of knowledge or information.

30.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants deny the allegations regarding interactions between Plaintiff and Dean Aistrup on May 8, 2015; lack knowledge or information about (and thus deny) what was in Plaintiff's mailbox and what Plaintiff "presumed"; and otherwise deny the allegations of this paragraph.

31.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s)

showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that Dean Aistrup sent an email making the described inquiry; deny the allegation regarding "sudden high level of panic/paranoia"; and otherwise deny the allegations of this paragraph.

32.     Defendants admit that Dean Aistrup requested a copy of Plaintiff's presentation on the stated date; otherwise denied.

33.     Defendants admit that, on or about the stated date, Auburn University supplied certain documents to Plaintiff's counsel pursuant to the earlier public records request; deny that anyone associated with Auburn arranged the produced documents in a way so as to highlight or emphasize any particular document(s); and otherwise deny the allegations of this paragraph.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph, and therefore deny same.

35.     Defendants admit that Dean Aistrup attended a meeting with Economics Department faculty to discuss the possibility of bringing in a department head from outside the Department which would be funded from extra-departmental sources; otherwise denied.

36.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that the Wall Street Journal published an August 27, 2015 article that presented generally the matters described in this paragraph and that quoted Plaintiff as alleged, and further admit that other media outlets carried similar reports; otherwise denied.

37.     Defendants admit the allegations of this paragraph.

38.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that Plaintiff received a 1% raise because he failed to submit the required activities report to Dean Aistrup; admit that Bian and Brown for good reason received larger increases; deny all allegations of retaliation; and lack knowledge or information about what Plaintiff "viewed," and therefore deny the final sentence of this paragraph.

39.     Defendants admit that Plaintiff received a 1% one-time salary supplement. Defendants deny any retaliation and lack knowledge or information about how Plaintiff "viewed" the matter, and therefore deny the second sentence of this paragraph.

40.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that the Economics Department faculty recommended Plaintiff's reappointment as Chair and that Dean Aistrup was made aware of this recommendation; admit that Dean Aistrup discussed with Dr. Beard the concept of Plaintiff's taking on a role in developing a new budgetary model for CLA that would not allow Plaintiff to continue as Chair of the Department; admit that Beard suggested that Aistrup speak with Plaintiff; and admit that Aistrup decided thereafter not to pursue the matter; otherwise denied.

41.     Defendants admit that a five-year review was conducted by a committee that was chaired by Dr. Gillespie; lack knowledge or information about any comments by Dr. Gillespie, but admit that Associate Provost Winn made a positive comment; otherwise denied.

42.     Defendants deny the allegations of the first sentence of this paragraph; deny the allegations of the second sentence because they are ambiguous; and deny the remaining allegations based on lack of knowledge or information.

43.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants lack knowledge or information as to what Plaintiff understood, and why he understood it, and therefore deny the allegations of this paragraph.

44.     Defendants admit that Plaintiff received his review on or about the day alleged, which was very shortly after Dean Aistrup had himself received the document, but otherwise deny the allegations of this paragraph.

45.     Defendants admit that Plaintiff received a 3.5% raise and that, as compared to other CLA department chairs, the raise was average or above.  Defendants further admit that the other individuals mentioned received raises commensurate with their overall contributions.  The remaining allegations are denied, including but not limited to denial of the retaliation allegation.

46.     Defendants admit that Plaintiff was advised in error that he had received a 2% one-time salary supplement, when in fact Dean Aistrup had assigned a 5% supplement; Defendants deny based on lack of knowledge or information what Plaintiff "knew"; otherwise denied.

47.     Defendants are without knowledge or information sufficient to admit or deny the allegations of this paragraph, which they therefore deny on that basis, except that they specifically deny that Plaintiff's "situation had grown intolerable."

48.     Defendants admit based on information and belief that Plaintiff met with President Gogue, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and therefore deny same.

49.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

50.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

51.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

52.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

53.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.   Defendants admit, however, that (1) President Gogue recommended to Provost Boosinger that the Economics Department be moved for administrative supervision purposes from CLA to the Provost's office, with Associate Provost Winn being the main point of contact for the Department and Department Head; (2) there were discussions about the possibility of the Economics Department moving to the University College; (3) and Gogue instructed Winn to address the issue of Plaintiff's merit increase and so advised Plaintiff.

54.     Defendants admit that Dr. Winn and Plaintiff discussed the possibility of the Department of Economics becoming a school and that they agreed that Plaintiff could prepare a proposal that could be considered by the departmental faculty and the APR Committee; otherwise denied.

55.     Defendants admit that Plaintiff prepared a proposal for the Economics Department to become a school, that the proposal was approved by the Economics faculty and submitted to the APR Committee, and that Dr. Winn advised the APR Committee that both the Provost's and President's offices supported the proposal; otherwise denied.

56.     Defendants admit that the earlier error, see response to paragraph 46, was corrected and that an additional sum was awarded to Plaintiff resulting in an overall 7% one-time salary supplement, and admit that Plaintiff's annual increase effective October 2016 remained at 3.5%; otherwise denied.

57.     Defendants admit that the proposal to the APR Committee was tabled at Plaintiff's suggestion or with his acquiescence, but are without knowledge or information sufficient to admit or deny the remaining allegations of this paragraph, which they accordingly deny.

58.     Defendants admit that Dr. Winn told Plaintiff that there would be no 2016 annual evaluation on him, but deny that Plaintiff did not know and understand why that decision was made.

59.     Defendants admit that the Provost's office assumed most if not all of the Department's approval queues, but deny the remaining allegations of this paragraph, noting the ambiguity of "operationally independent."

60.     Defendants are without knowledge or information regarding the truth of the allegations of the first sentence of this paragraph and therefore deny same.  They admit that Plaintiff worked on the Miller Hall project and admit the averments of the final sentence of this paragraph; otherwise denied.

61.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

62.     Defendants admit that a meeting among President Gogue, Provost Boosinger, Associate Provost Winn and Plaintiff was held in the President's office; that Boosinger counseled in favor of the Economics Department being relocated back to CLA; that Gogue and Winn listened to Boosinger's views; and that Gogue determined to continue having the Department administered through the Provost's office.   Defendants lack knowledge or information as to the last two sentences of this paragraph and therefore deny same; otherwise the averments of this paragraph are denied.

63.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same, except that Defendants admit that in June of 2017 Plaintiff did engage with the Provost's office on certain budgetary matters.

64.     Defendants admit that June 16, 2017 was President Gogue's last day in office, and admit that Plaintiff was advised of a 3% raise and a 3% one-time salary supplement; otherwise denied.

65.     Admitted.

66.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

12

7626289.4

67.     Defendants admit that a meeting between Plaintiff and Provost Boosinger was set up for early July, and that Dr. Winn, as Associate Provost, continued to be shown as Plaintiff's supervisor; otherwise denied.

68.     Defendants admit that a meeting among Plaintiff, Boosinger and Winn occurred on or about July 6, 2017, that Provost Boosinger stated in the meeting that the Economics Department would remain in CLA, and that Boosinger provided Plaintiff and Winn with copies of a memorandum that the Provost had written to Dean Aistrup, which was also copied to President Leath; otherwise denied.

69.     Defendants admit that administrative supervision of the Economics Department was returned to CLA, but otherwise deny the allegations of this paragraph.

70.     Defendants admit that the Economics Department relocated to Miller Hall in late July, 2017; otherwise denied.

71.     Defendants admit that on or about August 10, 2017, Plaintiff and Dean Aistrup met and discussed various matters relating to the Economics Department and CLA, including budget matters and departmental faculty needs. Defendants further admit that this appeared to be a good meeting and that certain preliminary agreements seemed to be reached.  Defendants are without knowledge or information as to what Plaintiff did or did not believe and what he was looking for or observed in the meeting; otherwise denied.

72.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

73.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

7626289.4

74.     Defendants admit that Provost Boosinger announced his upcoming retirement on or about September 5, 2017 and admit that September 5, 2017 was the next business day after September 1, 2017; otherwise denied.

75.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

76.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

77.     Defendants admit that Plaintiff contacted Associate Provost Winn about the Economics Department's faculty hiring needs and that Winn, who was no longer supervising Plaintiff because the Economics Department was no longer reporting to the Provost's office, did not become actively involved; Defendants further admit that President Leath, acknowledging unusual issues in the Department, wrote that he would speak with the Provost but did not intend to be involved in decisions; otherwise, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

78.     Defendants admit that (1) Provost Boosinger sent Plaintiff an email on October 11, 2017 and copied President Leath, and (2) Plaintiff came forward with former President Gogue's January 2017 memorandum. The remaining allegations of this paragraph are denied. Defendants are without knowledge or information regarding Plaintiff's "doubts."

79.     Denied.

80.     Defendants admit that Plaintiff objected to having CLA oversee the tenure and promotion process for the Economics Department candidates and expressed concerns about the

14

potential negative consequences should CLA not authorize a search for junior faculty; otherwise denied.

81.     Defendants admit that President Leath directed Plaintiff to submit the tenure and promotion packets to Dean Aistrup's office; otherwise denied.

82.     Defendants admit that Plaintiff complied with President Leath's directive; otherwise denied.

83.     Defendants admit that Dr. Hardgrave was installed as Provost and Senior Vice-President for Academic Affairs effective January 1, 2018 by Presidential appointment with prior Board of Trustees approval.  Defendants further admit that there was communication between Keeter and Plaintiff on or about November 10, 2017 and that as part of those communications Keeter sent an email to Plaintiff advising that President Leath was considering certain matters raised by Plaintiff. Otherwise, denied.

84.     Without admitting that the Economics Department was ever formally severed from CLA, Defendants admit that once the Economics Department was "returned" to CLA, CLA Dean Aistrup resumed responsibility as Plaintiff's supervisor; otherwise denied.

85.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

86.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

87.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

88.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

7626289.4

89.     Defendants admit that Plaintiff contacted Associate Provost Winn about the Department's hiring needs and that, at Plaintiff's request, Winn referred the matter to Provost Hardgrave; otherwise denied.

90.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

91.     Defendants admit that the described Chronicle article was published online on February 16, 2018 and later in print, and that the article, the content of which speaks for itself, included a photograph of and a quote from Plaintiff; otherwise denied.

92.     Defendants do not understand the allegations of this paragraph and therefore deny same.

93.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that Mr. Sophocleus wrote and published the named article on or about March 1, 2018; otherwise denied.

94.     Defendants admit that Plaintiff sent an email to the Provost's Human Resources officer, copied to President Leath and Associate Provost Winn, that in substance stated what is averred in this paragraph.

95.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph, and therefore deny same.

96.     Defendants admit that Dr. Beverly Marshall, in her capacity as Faculty Athletics Representative, made a presentation to the Faculty Senate about academic performance of

Auburn athletes, and that Plaintiff engaged with her during or following the presentation; otherwise denied.

97.     Defendants admit that Dr. Seals raised certain issues and agreed to meet with President Leath; otherwise denied.

98.     Denied.

99.     The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that Plaintiff sent certain materials to President Leath; otherwise denied.

100.    The allegations of these paragraphs are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer these paragraphs as follows: Defendants admit that Plaintiff proposed a meeting with President Leath and that the meeting did not occur; otherwise denied, and the allegation regarding a threat is specifically denied.

101.    The allegations of these paragraphs are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer these paragraphs as follows: Defendants admit that Plaintiff proposed a meeting with President

Leath and that the meeting did not occur; otherwise denied, and the allegation regarding a threat is specifically denied.

102.    The allegations of these paragraphs are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer these paragraphs as follows: Defendants admit that Plaintiff proposed a meeting with President Leath and that the meeting did not occur; otherwise denied, and the allegation regarding a threat is specifically denied.

103.    Defendants admit that President Leath did not meet with Plaintiff, that no separate budget for Economics was executed because none had ever been authorized, that the Economics Department remained in CLA. Otherwise the allegations of this paragraph are denied, and the allegation regarding a threat is specifically denied.

104.    Defendants admit that certain data maintained by the Provost's office showed that the Economics Department was statistically productive; otherwise denied.

105.    Defendants admit that Dr. Marshall made a presentation to the Faculty Senate on or about May 15, 2018 and that Plaintiff made his own presentation; otherwise denied.

106.    The allegations of this paragraph are not "simple, concise, and direct," as required by Fed. R. Civ. P. 8(d)(1), and, taken as a whole, the claims asserted do not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claim(s) showing that the [plaintiff] is entitled to relief." Reserving all rights, Defendants answer this paragraph as follows: Defendants admit that on May 25, 2018, Dean Aistrup advised Plaintiff orally and in writing that he was being relieved of his duties as Chair of the Economics

Department; that appropriate administrative and logistical steps were taken to implement this change; that among other documents Plaintiff was given a memorandum that advised him that his current salary would continue until August 15, 2019; that there was a discussion regarding keys and key access that was routinely resolved; that CLA leadership and staff were advised by email of Plaintiff's changed status; that Dr. Seals was advised by Dean Aistrup of his removal as Graduate Programs Officer; and that through an oversight in the Dean's office, no notice of Plaintiff's changed status was sent to Department faculty and personnel until the following week, once the omission was discovered; otherwise the allegations of this paragraph are denied.

107.    Admitted.

108.    Defendants admit that an email was sent to Department personnel on the Wednesday following Memorial Day, once the omission (as described in response to paragraph 106) was discovered.  It is further admitted that Dean Aistrup explored certain internal and external options for a person to serve as interim chair.  Defendants are without knowledge or information regarding the content of any conversation between Bobrowski and Plaintiff and therefore deny that allegation.  Otherwise the averments of this paragraph are denied.

109.    Defendants admit that Dr. Seals sent an email on May 31, 2018, which speaks for itself; otherwise denied.

110.    Defendants admit that Dr. Israel made a routine request for information to Plaintiff regarding the process previously used by the Department to open seats during Camp War Eagle sessions.  Defendants further admit that Plaintiff's office and furniture suffered damage caused by third-party contractors during the move to Miller Hall, and that the damage was addressed routinely and timely.  All further allegations are denied.

111.    Defendants admit that Professor Kim agreed to become interim chair of the Economics Department and that his salary was set based on appropriate factors, including his faculty rank and the responsibilities being assumed; otherwise denied.

112.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny same.

113.    Defendants deny the averments of this paragraph, except that they admit that Dr. Kim was not the appropriate authority to evaluate Plaintiff at the stated time.

114.    Defendants admit the first sentence of this paragraph and deny the second sentence.

115.    Defendants admit that a graduate program committee was formed and that Plaintiff was not named as a member; otherwise denied.

116.    Defendants are without knowledge or information sufficient to form a belief as to truth of the allegations of this paragraph, and therefore deny same.

117.    Defendants admit that such a grievance was filed and summarily dismissed; otherwise denied.

118.    Defendants admit that the hiring committees were formed and that Plaintiff was not asked to chair or serve on any of them; and further admit that for good reason Dr. Kim chose to serve on the international committee; otherwise denied.

119.    Defendants admit that Board of Trustees representatives issued an annual assessment of the President dated September 13, 2018 and that the assessment addressed communications among other topics; for further answer Defendants say that the assessment speaks for itself.

120.    Defendants admit that Plaintiff received no salary increase, based on his evaluation as "unacceptable" stemming from Plaintiff's failure to submit annual performance review materials for 2017; that he received no letter because CLA routinely does not issue such letters to one receiving a zero raise; and that other departmental faculty did receive increases and corresponding letters.  Otherwise the averments of this paragraph are denied.

121.    Defendants admit that assignment of a 0% increase is subject to Provost approval. Defendants deny the second sentence of this paragraph because it is ambiguous.  All other averments of this paragraph are denied.

122.    Defendants admit that Mr. Sophocleus was asked to take minutes of the meeting; otherwise denied.

123.    Defendants admit that Jennifer Bruno provided access-limited information to Plaintiff, and perhaps others, without first confirming with Dr. Kim, the Department chair, that her actions were authorized, and that Dr. Kim instructed Bruno that, in the future, she was to discuss with Dr. Kim in advance any request by Department personnel for information that required access credentials; otherwise denied.

124.    Defendants admit the averments of this paragraph.

125.    Defendants admit that, for what he considered good reasons, Dr. Kim removed Beard and Plaintiff from the dissertation committee of a student who had been subject to hostility and largely ignored by Beard and Plaintiff, who were not sufficiently familiar with the student's research activities to meaningfully or appropriately serve; admit that the Dean of the Graduate School interceded and restored Beard and Plaintiff to the committee; and further admit that the Graduate School Dean himself participated in the student's dissertation review in order to assure fairness; otherwise denied.

126.    Defendants admit that Dr. Kim appropriately instructed Bruno to refer to him students who expressed an interest in majoring or minoring in Economics; deny that Kim encouraged other faculty not to attend an unofficial meeting called by Plaintiff; and admit that few faculty attended; otherwise denied.

127.    Defendants admit the averments of this paragraph and admit that this was a standard 11- to 9-month stepdown.

128.    Defendants admit that Plaintiff received an evaluation as alleged.

129.    Defendants admit that Bruno wrote a letter dated May 10, 2019, which letter speaks for itself; otherwise denied.

130.    Defendants admit that Defendant Aistrup wrote Bruno a transfer letter dated May 16, 2019, and that the letter speaks for itself; otherwise denied.

131.    Defendants admit that Defendant Leath resigned and that the official "Resignation Date" was June 21, 2019, and further admit that the separation agreement included a provision for payment to Dr. Leath of $4.5 million in three equal installments.

132.    Admitted.

133-161.  For paragraphs 133-161, unless specifically admitted elsewhere in this answer, Defendants deny the allegations of these paragraphs.  Defendants further deny that any act or omission alleged in these paragraphs (separately or in combination) was intended to, or had the effect or result of, depriving Plaintiff of his First Amendment or any other constitutional rights.

162.    Defendants adopt their responses to all paragraphs in Plaintiff's complaint.

163.    Denied.

164.    Denied.

165.    Denied.

22

166.    Denied.

167.    Denied.

168.    Defendants adopt their responses to all paragraphs in Plaintiff's complaint.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Defendants adopt their responses to all paragraphs in Plaintiff's complaint.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Denied.

181.    Denied.

## **SECOND DEFENSE**

To the unnumbered paragraphs of the complaint beginning with the term "WHEREFORE, PREMISES CONSIDERED," Defendants deny that Plaintiff is entitled to relief of any type or nature, deny that Plaintiff should be placed in any position, deny that Plaintiff should receive back pay, injunctive relief, interest, attorney fees, or costs, and deny that Plaintiff should receive legal or equitable relief of any type or nature.

7626289.4

**THIRD DEFENSE**

Defendants deny that they are liable to Plaintiff in any respect and deny that he is entitled to any of the relief sought.

**FOURTH DEFENSE**

Even if Plaintiff engaged in constitutionally protected speech or conduct, and even if that speech or conduct were a motivating factor in any adverse decision(s), that same decision(s) would have been made anyway for legitimate reasons unrelated to any protected speech or conduct.

**FIFTH DEFENSE**

Even if Plaintiff engaged in speech on a matter of public concern, there was no causal connection between that speech and any adverse action taken against Plaintiff by Defendants. In addition, Plaintiff's interest in commenting upon such matters does not, under the circumstances, outweigh Auburn University's (and by extension Defendants') interest as an employer promoting the efficiency of public services it performs. *See Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000) (citing *Pickering v. Bd. of Educ. Of Township High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 88 S. Ct. 1731 (1968)).

**SIXTH DEFENSE**

Each Defendant is entitled to the protections of qualified immunity and state actor immunity.

**SEVENTH DEFENSE**

Defendants in their official capacities are entitled to the absolute immunity provided by Article I § 14 of the Constitution of Alabama of 1901 and to the immunity provided by the Eleventh Amendment to the Constitution of the United States.

7626289.4

## EIGHTH DEFENSE

The claims asserted against Defendants fail to state a claim upon which relief can be granted.

## NINTH DEFENSE

The amended complaint's allegations are not "simple, concise, and direct" as required by Fed. R. Civ. P. 8(d)(1) and, taken as a whole, the amended complaint does not comply with Rule 8(a)'s requirement that the pleading contain "short and plain statement(s) of the claims(s) showing that the [plaintiff] is entitled to relief."

## TENTH DEFENSE

The Court lacks subject matter jurisdiction for the reasons addressed in Docs. 11 and 18, which are hereby incorporated by reference.

## ELEVENTH DEFENSE

Plaintiff's claims relating to an alleged conspiracy are barred by the intracorporate conspiracy doctrine.

## TWELFTH DEFENSE

Plaintiff's claim alleging a civil conspiracy under Alabama law is not premised upon a valid underlying tort, and, even if it were, Defendants did not agree and work together to commit the underlying tort.

## THIRTEENTH DEFENSE

No changes were made in the conditions of Plaintiff's employment as a result of or in retaliation for Plaintiff's engaging in any form of protected speech or activity.

## FOURTEENTH DEFENSE

Any damages that Plaintiff seeks to recover are subject to the applicable damage caps.

7626289.4

## FIFTEENTH DEFENSE

Defendants reserve the right to amend this answer to include additional defenses that may be uncovered during the course of this litigation.

## SIXTEENTH DEFENSE

Plaintiff lacks standing to bring claims relating to the alleged treatment of third parties. *See See In re Godfrey*, 472 F. Supp. 364, 369 (M.D. Ala. 1979) ("One of the basic tenets of the standing doctrine is that an individual must assert *his own* legal interests *rather than those of third parties*.") (citing *Gladstone v. Village of Bellwood*, 441 U.S. 91, 99 S. Ct. 1601 (1979); *Tileston v. Ullman*, 318 U.S. 44, 63 S. Ct. 493 (1943)) (emphasis added); *see also Raley v. Astrue*, No. 2:11cv555–WC, 2012 WL 2368609, at *8 (M.D. Ala. June 21, 2012).

## SEVENTEENTH DEFENSE

Any allegation of the second amended complaint not expressly admitted is denied.

Respectfully submitted this the 30th day of October, 2019.

> */s/Aria B. Allan*
> One of the attorneys for defendant

OF COUNSEL:
David R. Boyd (ASB-0717-D52D)
dboyd@balch.com
John G. Smith (ASB-8146-T68J)
jgsmith@balch.com
Aria B. Allan (ASB-2064-E10Q)
aallan@balch.com
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101
(334) 834-6500

7626289.4

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 30, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following by email and/or US mail:

John D. Saxon
Donna S. Cude
John D. Saxon, P.C.
2119 3rd Avenue North
Birmingham, AL 35203

*/s/Aria B. Allan*
Of Counsel

27

7626289.4