IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DR. MICHAEL L. STERN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CV-807-WKW |
| | ) | [WO] |
| STEVEN LEATH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Michael L. Stern, Ph.D., is a tenured economics professor at Auburn University and an eight-year former chair of the Department of Economics in the College of Liberal Arts. In late 2013, Dr. Stern learned that a substantial percentage of scholarship student-athletes, particularly those in the football program, were majoring in public administration. Not long after, Dr. Stern also became aware of Auburn University's rejection of an external curriculum review committee's proposal to close the major based on concerns that it lacked academic integrity. Believing that the university was behind the clustering of student-athletes into an athletic-friendly major and that its athletic department had fueled the major's retention, Dr. Stern vocalized his concerns initially at university senate meetings and later to the press which reported on the events in published articles. During this

time, Dr. Stern also independently investigated the matter and had his attorney obtain Auburn University documents through a request under the Alabama Public Records Law.  He contends that, as a result of his continued outspokenness regarding the foiled closure of the public administration major and the clustering of athletes in that major, he suffered myriad retaliatory acts—including his removal as chair of his department.

In this action, Dr. Stern alleges civil rights violations against four Auburn University officials:  President Jay Gogue in his official capacity; former President Steven Leath, in his individual capacity; Provost William Hardgrave, in his individual and official capacities; Vice President for Academic Affairs Timothy R. Boosinger, in his individual and official capacities; and Dean of the College of Liberal Arts Joseph Aistrup, in his individual and official capacities.  In Count 1, Dr. Stern asserts that these officials carried out a campaign of retaliatory harassment against him in violation of his rights under the First Amendment, as enforced by 42 U.S.C. § 1983.  In Counts 2 and 3, he alleges that Defendants conspired to retaliate against him for engaging in speech protected by the First Amendment in violation of 42 U.S.C. § 1985 and Alabama law.[1]

---

[1] Although Dr. Stern's operative complaint does not cite a particular subsection of § 1985, his supporting allegations, as well as his summary judgment briefing, rely on § 1985(3).  Section 1985(3) provides in pertinent part that, "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," the injured

2

Defendants move for summary judgment on all claims. (Doc. # 82.) The motion is fully briefed with accompanying evidentiary submissions. (Docs. # 83–84, 89–90.) This opinion addresses only Defendants' motion as to Counts 2 and 3 and assumes the parties' familiarity with the procedural history and the summary judgment record. An opinion on Count 1 is under deliberation and will issue at a later date.

## II. STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence, and all reasonable inferences drawn from it, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

## III. DISCUSSION

To establish a civil conspiracy claim under § 1985(3), Dr. Stern "must show an agreement between 'two or more persons' to deprive him of his civil rights." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (quoting § 1985(3)). Similarly, under Alabama law, "civil conspiracy is a combination of

---

party "may have an action for the recovery of damages occasioned by such injury or deprivation." § 1985(3).

3

two or more persons to accomplish an unlawful end (by civil law standards) or to accomplish a lawful end by unlawful means." *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010) (citing *Purcell Co. v. Spriggs Enters., Inc.*, 431 So. 2d 515, 522 (Ala. 1983)).

Defendants contend that the intracorporate conspiracy doctrine prevents Dr. Stern from proving that more than one individual conspired against him, thus dooming his claims for civil conspiracy under federal and state laws. In response, Dr. Stern argues that there are sound policy reasons for rejecting the doctrine's application on this record. He argues alternatively that, even if the intracorporate conspiracy doctrine applies, two exceptions to its applicability save his claims: (1) the criminal conspiracy exception; and (2) the series of discriminatory acts exception. (*See* Doc. # 90, at 190–96.) For the reasons to follow, the intracorporate doctrine bars Counts 2 and 3, and neither exception prevails.

A. **The Intracorporate Conspiracy Doctrine**

The intracorporate conspiracy doctrine applies when each member of the alleged conspiracy is a member of the same organization:

> The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1035 (11th Cir. 2000) (en banc). The origin of the doctrine is "from basic agency principles that attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." *Dickerson*, 200 F.3d at 767 (citation and internal quotation marks omitted). In other words, "it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself." *Id.*

As articulated in *McAndrew*, the doctrine applies only where the employees were acting within the scope of their employment. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 n.30 (11th Cir. 2010) (noting that this circuit "treats scope of employment more as part of the formulation of the intracorporate conspiracy doctrine itself," rather than as an exception to the doctrine). "[T]he question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally." *Id.* at 1261. "The scope-of-employment inquiry is whether the employee . . . was performing a function that, but for the alleged constitutional infirmity, was within the ambit of [his or her] scope of authority (*i.e.*, job-related duties) and in furtherance of the employer's business." *Id.*

*Dickerson* observed that in § 1985(3) cases the intracorporate conspiracy doctrine "has been applied not only to private corporations but also to public,

5

government entities." 200 F.3d at 767 (collecting cases, including *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977) (per curiam)). In *Dickerson*, the plaintiff brought a § 1985(3) claim against his county employer and its employees alleging that his demotion was the result of a conspiracy to violate his constitutional rights. *Id.* at 767–68. *Dickerson* found that the *Chambliss* decision was controlling. *See id.* at 768.

In *Chambliss*, the former Fifth Circuit affirmed summary judgment for the University of New Orleans and its officials on the plaintiff's § 1985(3) claim alleging a conspiracy to interfere with the plaintiff's civil rights in the non-renewal of her teaching contract. The district court found that the "university and its officials are considered as constituting a single legal entity which cannot conspire with itself." *Chambliss v. Foote*, 421 F. Supp. 12, 15 (E.D. La. 1976). The Fifth Circuit "affirm[ed] on the basis of the district court's opinion." *Chambliss*, 562 F.2d at 1015.[2] Acknowledging *Chambliss* as binding precedent, the Eleventh Circuit in *Dickerson* held:

> This case, like *Chambliss*, involves a § 1985(3) claim against actors who are part of a single, public entity and who allegedly conspired to interfere with civil rights. Also like *Chambliss*, this case does not involve even a single conspirator from outside that public entity and does not involve any criminal conduct. Thus, under *Chambliss*, the County jail and its employees are considered to constitute a single legal entity that cannot conspire with itself.

---

[2] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding on panels of the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

6

*Dickerson*, 200 F.3d at 768 & n.8.

Likewise, the Alabama Supreme Court has applied the intracorporate conspiracy doctrine to bar a civil conspiracy claim brought under state tort law. *See M & F Bank v. First Am. Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013) (holding that the intracorporate conspiracy doctrine "provide[d] a sufficient ground for the summary judgment" on a civil claim that a company and its employees had conspired to commit fraud (citing *Grider*, 618 F.3d at 1261 and *McAndrew*, 206 F.3d at 1036)). District courts that have analyzed the doctrine under Alabama law have concluded that the state's highest court would impose the same parameters to the doctrine as the Eleventh Circuit has. *See Seals v. Leath*, No. 3:19cv468, 2019 WL 6997398, at *7 (M.D. Ala. Dec. 18, 2019) ("[T]here is little doubt that the Alabama Supreme Court would apply the intracorporate conspiracy doctrine in the same way the Eleventh Circuit has."); *White v. City of Athens*, 169 F. Supp. 3d 1254, 1269 (N.D. Ala. 2016) ("[T]he Court has little difficulty concluding that, if presented directly with the issue, the Alabama Supreme Court would hold that the intracorporate conspiracy doctrine applies to public entities.").

The court finds that the intracorporate conspiracy doctrine applies to Count 2 brought under § 1985(3), as well as to Count 3 brought under Alabama law. In each count, Dr. Stern alleges a conspiracy among Auburn University's officials in their individual and/or official capacities: President Gogue; former President Leath;

Provost Hardgrave; Vice President for Academic Affairs Boosinger; and Dean Aistrup. During his deposition, Dr. Stern also implicated his successor as chair and certain athletic officials; they too are Auburn employees. (*See* Doc. # 83-1, at 178–79 (Pl. Dep. at 473–74).) No officials outside Auburn University are alleged to be involved in the conspiracies. The evidence implicates one entity, Auburn University, acting through its employees, and Dr. Stern does not contend otherwise. Furthermore, the court finds that the myriad allegedly retaliatory acts—which include Dr. Stern's removal as chair, the retention of the economics department as part of the College of Liberal Arts, and allegedly unjustifiably low raises and bonuses—are actions that relate to job duties within Defendants' roles as administrative officials as president, vice president, provost, and dean.

This case—like *Chambliss* and *Dickerson*—invokes a § 1985(3) claim against officials who are employed by a single, public institution and whom during the scope of their employment allegedly conspired to hinder the plaintiff's constitutional rights. Hence, under the intracorporate conspiracy doctrine, Defendants—whom include Auburn officials sued in their individual and official capacities—"are considered a single legal entity," and a single governmental legal entity is " not . . . capable of conspiring with itself." *Dickerson*, 200 F.3d at 768. Dr. Stern has not cited any state-law authority or offered a convincing reason that Alabama courts would reach a different conclusion. *See Seals*, 2019 WL 6997398, at *7; *White*, 169

F. Supp. 3d at 1269. On these facts, the conspiracy claims in Counts 2 and 3 fail based on a straightforward application of the intracorporate conspiracy doctrine.

This conclusion finds support in a corresponding case brought by one of Dr. Stern's colleagues in the economics department. *See Seals*, 2019 WL 6997398. In *Seals*, the plaintiff brought suit against the same defendants, as well as the current chair of the economics department, alleging that he engaged in protected speech in protest against the administration's decision to retain the public administration major and that, as a result, he suffered retaliation at their hands. *See id.* at *1–2. The plaintiff's lawsuit included conspiracy claims under § 1985(3) and Alabama law. Over the plaintiff's objection, the court found that the university's actions, such as "removing [the plaintiff] as the Economics Department Graduate Program officer, blocking his participating in Department committees, refusing to meet with him, unilaterally reabsorbing [the] department, and reducing his teaching assistant support," were "all actions that were firmly within the employment role of the Defendants as employees of Auburn." *Id.* at *6. Granting the defendants' motion to dismiss, the court held that the intracorporate conspiracy doctrine precluded both the federal and state conspiracy claims against the Auburn administrators:

> Defendants cannot be held liable for a federal conspiracy in violation of § 1985. The decisions made by Defendants were administrative in nature and were tied to their duties at Auburn University. Since all the named conspirators are employees of the same entity, they cannot be liable under federal law.

*Id.* at *7.

Dr. Stern offers two arguments for rejecting the doctrine's application, but they are not persuasive. First, Dr. Stern's statement that Dean Aistrup acted outside the scope of his employment surfaces in a footnote that is barren of analysis and legal authority. Dr. Stern suggests that "Aistrup acted outside the scope of his employment through his 'threatening, intimidating communication' given the time and place some of those acts occurred (*i.e.*, the parking lot of the Callaway Gardens retreat)" and because Aistrup "was quoted in some of the articles written about the PUBA [public administration] scandal." (Doc. # 90, at 191 n.141.) At his deposition, Dr. Stern testified that, in that parking lot, Dean Aistrup "[g]ot in [his] face screaming" that he did "not want to see" Dr. Stern's name in another news article about the public administration major because it "would destroy the college" of liberal arts. (Doc. # 83-1, at 63 (Pl. Dep., at 238).) The proper inquiry is whether Dean Aistrup had authority to address Dr. Stern on matters concerning intra-college conflicts about academic majors, not whether he had authority to take threatening actions against Dr. Stern to chill his speech on matters of public concern. *Cf. Grider*, 618 F.3d at 1262 ("[W]e . . . ask whether it was within Officer Crook's job duties or scope of authority to make bribery charges against Grider, not whether he was authorized or employed to file false bribery charges in furtherance of the City's business. All of Crook's acts were clearly within the scope of his employment as a

10

law enforcement officer."). Dr. Stern points to no evidence that Dean Aistrup's actions in the parking lot were not within the scope of his employment as a dean. Additionally, Dr. Stern's suggestion that Dean Aistrup acted outside the scope of his employment in speaking to the press about a university decision to retain an academic major in Auburn's liberal arts college over which he was dean finds no support in the record and is baseless.

Second, Dr. Stern devotes substantial argument to challenging the wisdom of Eleventh Circuit jurisprudence. (*See* Doc. # 90, at 185–90 (arguing that "the intracorporate conspiracy doctrine should not apply in the Eleventh Circuit, particularly in a public university setting").) This court though is bound to follow *Chambliss* and *Dickerson*. *See McAndrew*, 206 F.3d at 1038 ("*Chambliss* and *Dickerson* remain the law in this Circuit."). The analysis turns to the doctrine's exceptions upon which Dr. Stern relies.

**B.** **Exceptions to the Intracorporate Conspiracy Doctrine**

    **1.** *Criminal Conspiracy Exception*

Relying on *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031 (11th Cir. 2000) (en banc), Dr. Stern asserts that his conspiracy claims are exempt from the doctrine's bar under the criminal conspiracy exception. In his brief, Dr. Stern argues that the civil conspiracies implicate criminal liability because "there was a specific group of highly relevant documents that Defendants withheld" from Dr. Stern's open

11

records request "in order to specifically limit his speech to reporters." (Doc. # 90. at 192.) Dr. Stern contends that Defendants "could be subject to" criminal misdemeanor penalties under Alabama Code § 13A-10-12 based on the withholding of these documents.[3] (Doc. # 90, at 193.)

Defendants counter that Dr. Stern's summary judgment response is "the first time [Dr. Stern] has alerted Defendants (and this Court) that he suspects Defendants have engaged in criminal activity relating to the production of public records in response to the 2015 public records request." (Doc. # 96, at 42.) Defendants argue that the record is devoid of evidence of criminal activity on the part of any Defendant, that Auburn University's Office of General Counsel—not Defendants—coordinated the response to the open records request, and that no Defendant knew that Dr. Stern was the individual behind the public records request until he filed this lawsuit. (Doc. # 96, at 42–43.) Defendants have the better arguments.

The principal case upon which Dr. Stern relies is distinguishable. In *McAndrew*, the Eleventh Circuit reaffirmed the well-established "exception to the applicability of the intracorporate conspiracy doctrine for intracorporate criminal conspiracies arising under 18 U.S.C. § 371 of the federal criminal code." 206 F.3d

---

[3] Section 13A-10-12, a Class A misdemeanor, provides in part that "[a] person commits the crime of tampering with governmental records if . . . [k]nowing he lacks the authority to retain a governmental record he refuses to deliver up the record in his possession upon proper request of a person lawfully entitled to receive such record for examination or other purposes."

12

at 1038. In that case, the employee brought a conspiracy claim under § 1985(2), alleging that corporate officers conspired in part under § 371 to deter him from testifying before a federal grand jury about potential crimes of the employer. The Eleventh Circuit extended the criminal conspiracy exception to civil conspiracies under § 1985(2): "[J]ust as the intracorporate conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under 42 U.S.C. § 1985(2)." *Id.* "Because a § 1985(2) claim alleging a conspiracy to deter a person by force, intimation, or threat from testifying in a federal court proceeding squarely and unambiguously alleges a criminal conspiracy in violation of" § 371, "the intracorporate conspiracy doctrine does not apply, and, therefore, cannot shield the Defendants from civil liability." *Id.* at 1035–36.

Contrary to Dr. Stern's contention, *McAndrew* did not hold that "the criminal conspiracy exception applies in a civil conspiracy action under . . . *§ 1985(3)* when the same facts could support a criminal proceeding under . . . § 371." (Doc. # 90, at 192 (emphasis added).) *McAndrew* addressed a conspiracy claim only under § 1985(2). In *McAndrew*, the Eleventh Circuit distanced its holding from *Chambliss* and *Dickerson*, both of which involved a conspiracy claim only under § 1985(3):

> *Chambliss* and *Dickerson* remain the law in this Circuit. We have no occasion to revisit them today because neither case addressed the

13

> precise question presented here: whether the intracorporate conspiracy doctrine applies to and bars claims alleging a criminal conspiracy among corporate officers and the corporation itself arising under 42 U.S.C. § 1985(2). Neither case involved a claim brought under § 1985(2) and, more importantly, neither involved allegations of a criminal conspiracy to deter by force, intimidation, or threat an individual from testifying before a federal grand jury.

*Id.* at 1037–38. *McAndrew* does not support Dr. Stern's argument for applying the criminal conspiracy exception to his conspiracy claims.

Furthermore, there are additional reasons why the criminal conspiracy exception is inapt on this record. While Dr. Stern argues in his brief that Defendants conspired to violate § 13A-10-12, the operative complaint does not include this conspiratorial aim. Counts 2 and 3 do not seek relief for conspiracies involving criminal acts, and the amended complaint contains no reference to § 13A-10-12. Rather, Counts 2 and 3 seek relief for conspiracies involving violations of Dr. Stern's constitutional civil rights. Count 2 alleges that "Defendants intentionally and willfully conspired against Plaintiff to deprive him of his constitutionally-protected speech under the First Amendment" through their retaliatory acts. (Doc. # 47, ¶ 169.) Similarly, Count 3 alleges that Defendants "conspired to illegally retaliate against Dr. Stern for engaging in federally-protected speech and exercising his federally-protected right to speak out on matters of public concern" in violation of Alabama civil conspiracy law. (Doc. # 47, at ¶ 178.) Dr. Stern cannot amend his complaint in response to a summary judgment motion. *Am. Fed'n of State, Cnty. &*

14

*Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Additionally, as Dr. Stern recognizes, "Alabama courts have not specifically addressed exceptions to the intracorporate conspiracy doctrine" (Doc. # 90, at 191 n.142), and he advances no persuasive reason that Alabama courts would adopt and apply the criminal conspiracy exception on these facts. However, even if Dr. Stern's theory founded on a conspiracy to violate § 13A-10-12 had support in the allegations and law, Dr. Stern has failed to point to any evidence—as opposed to speculation—upon which a reasonable juror could conclude that Defendants tampered with university records and knowingly withheld documents that were subject to a proper request. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that a genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor). While Dr. Stern contends that "highly relevant documents" were missing from the public records request (Doc. # 90, at 192), he has not pointed to any evidence that connects these omissions to the collective actions and intent of Defendants.

Based on the foregoing, Dr. Stern has failed to present authority or evidence demonstrating that the criminal conspiracy exception exempts his conspiracy claims in Counts 2 and 3 from the bar of the intracorporate conspiracy doctrine.

### 2. *Series of Discriminatory Acts Exception*

Dr. Stern argues that Defendants' "prolonged and organized campaign of harassment" against him satisfies the standard for the "series of discriminatory acts" exception to the intracorporate conspiracy doctrine. (Doc. # 90, at 195–96.) Countering, Defendants emphasize that the Eleventh Circuit has not adopted this exception, and they assert that this court should not either. (Doc. # 96, at 43–44.) Alternatively, Defendants contend that Dr. Stern has not cited any persuasive, non-binding decision on similar evidence that warrants application of the exception. (Doc. # 96, at 44–45.)

Defendants are correct that the Eleventh Circuit has neither accepted nor rejected this exception. In *Dickerson*, the Eleventh Circuit listed three exceptions recognized by other courts, including where "defendants' conduct 'involved a series of acts over time going well beyond simply ratification of a managerial decision by directors.'" 200 F.3d at 770 (quoting *Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984) (Breyer, J.)). However, because the facts did not support this "series of discriminatory acts" exception, the court did not "reach the issue of whether to adopt [it] in this circuit." *Id.* A decade later, the Eleventh Circuit again declined to decide

16

whether to adopt this exception. *See Grider*, 618 F.3d at 1263 ("[W]e, like the Court in *Dickerson*, do not reach the issue of whether to adopt" the series of discriminatory acts exception). There is, thus, no binding authority for the exception in this circuit.

Other district courts in this circuit have declined to recognize the series of discriminatory acts exception. *See, e.g., Steffens v. Nocco*, No. 819CV01940, 2021 WL 1020967, at *4 (M.D. Fla. Mar. 17, 2021) ("Viewing this as a matter of first impression within the Eleventh Circuit, this Court will not apply the 'series of acts' exception."); *Doe v. Univ. of S. Alabama*, No. CV 17-0394-CG-C, 2020 WL 759895, at *16 (S.D. Ala. Feb. 14, 2020) ("[T]he Court finds that the 'series of discretionary acts' exception does not apply in this circuit."); *Jackman v. 20th Jud. Cir. Ct. Admin.*, No. 219CV828, 2020 WL 6321921, at *3 (M.D. Fla. Oct. 28, 2020) (observing that "the series of discriminatory acts exception has apparently never been adopted by any court within this Circuit" and "join[ing] the other in-Circuit district courts that refuse to adopt the series of discriminatory acts exception with no indication it should apply" (collecting cases)), *reconsideration granted in part on other grounds*, No. 219CV828, 2020 WL 7711112 (M.D. Fla. Dec. 29, 2020). In *Jackman*, the court further opined that "the basis for such an exception is untenable." 2020 WL 6321921, at *4. "The intracorporate conspiracy doctrine bars suit by 'negating the multiplicity of actors necessary.'" *Id.* (quoting *McAndrew*, 206 F.3d at 1036). It is the actors' relationship—an entity and its employees—that binds the actors as a

17

single entity and "vitiates the bedrock requirement of a conspiracy (*i.e.*, meeting of the minds between two or more actors)." *Id.* This essential element of a conspiracy "says nothing about the number of acts needed to support the conspiracy." *Id.* (citing *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 111 (7th Cir. 1990) (rejecting the series of discriminatory acts exception because conspiracy liability "depends on multiple actors, not on multiple *acts* of discrimination")); *see also Steffens v. Nocco*, No. 819CV01940, 2021 WL 1020967, at *4 (M.D. Fla. Mar. 17, 2021) (rejecting the underpinning of the series of discriminatory acts exception because "[i]f a conspiracy requires more than one entity, then the number of actions involved seems irrelevant").

The parties have not cited a binding Eleventh Circuit decision that has adopted the series of discriminatory acts exception, and independent research has not uncovered one. In two published decisions, the Eleventh Circuit has acknowledged the exception but has declined to decide whether to accept or reject it. *See Grider*, 618 F.3d at 1263; *Dickerson*, 200 F.3d at 770. There is little guidance then as to whether in a different case with different facts, the Eleventh Circuit would adopt the series of discriminatory acts exception. Nor is there clear direction as to the type of facts that would support the exception should the Eleventh Circuit decide to adopt it. The same holds true under Alabama law as the parties have cited no Alabama Supreme Court decision that has adopted or discussed this exception. Based on the

absence of binding precedent and the weight of persuasive district court authority, the court declines to apply the series of discriminatory acts exception to the intracorporate conspiracy doctrine.

## IV. CONCLUSION

The intracorporate conspiracy doctrine bars Dr. Stern's conspiracy claims under § 1985(3) and Alabama law, and Dr. Stern has not demonstrated an applicable exception to the doctrine. Counts 2 and 3 cannot survive summary judgment.

Accordingly, it is ORDERED that Defendants' motion for summary judgment on Counts 2 and 3 (Doc. # 82) is GRANTED.

A ruling on Defendants' motion for summary judgment on Count 1 (Doc. # 82) is reserved.

DONE this 8th day of July, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE