# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **DR. MICHAEL L. STERN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | **3:18-cv-00807-CLM-JTA** |
| **v.** | ) | |
| | ) | |
| **DR. STEVEN LEATH, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFF'S RESPONSES TO
## DEFENDANTS' MOTIONS *IN LIMINE* (DOC. 140)

---

COMES NOW Plaintiff Dr. Michael L. Stern, by and through his attorneys of record, and responds to Defendants' Motions *in Limine* (Doc. 140) as follows:

## I.  STANDARD OF REVIEW

Motions *in limine* are not meant to reduce the trial of an action to paper. In most contexts, this Court should reserve ruling on the admissibility of evidence until it can see the context in which the evidence is being offered and for what reason(s). Motions *in limine* are for the rare situations when evidence would not be admissible for any reason or any purpose. Defendants' motions do not meet this showing; rather, Defendants are merely moving to exclude relevant and truthful evidence.

Motions *in limine* that seek exclusion of broad and unspecific categories of evidence are generally disfavored. *Sperberg v. The Goodyear Tire and Rubber Co.*,

1

519 F.2d 708, 712 (6th Cir. 1975). The trial court "is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). Therefore, when confronted with this situation, "a better practice is to deal with questions of admissibility of evidence as they arise [in actual trial]" as opposed to tackling the matter in a vacuum on a motion *in limine*. *Sperberg*, 519 F.2d at 712; *see United States v. Marino*, 200 F.3d 6, 11 (1st Cir. 1999) (recognizing that proffered evidence can be more accurately assessed in the context of other evidence).

"A motion *in limine* presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." *In re Seroquel Prods. Liab. Litig.*, Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 U.S. Dist. LEXIS 134900, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." *Id.* (internal quotation omitted). "A court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds." *Id.* (internal quotation omitted).

"A motion *in limine* is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." *LSQ Funding Grp.*

2

*v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012) (*citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co.*, No. 07-80172-CIV, 2008 U.S. Dist. LEXIS 44417, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." *In re Seroquel*, 2009 U.S. Dist. LEXIS 134900, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." *Id.* "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." *Id.*

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998); *see also United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003) ("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury."). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *In re Seroquel*, 2009 WL 260989, at *1.

Defendants are aware of how damaging the evidence of their conduct will be when presented to a jury. Although Rule of Evidence 403 allows for relevant evidence to be excluded if the prejudice outweighs its probative value, such is not the case here. Defendants' strategy is to force Plaintiff to litigate his claims in a vacuum by limiting admissible evidence of his protected speech and Defendants' retaliation therefor.

## II.   DEFENDANTS' MOTIONS *IN LIMINE*

### A.   CERTAIN ALLEGATIONS MADE IN STERN'S COMPLAINT ARE PROPERLY EXCLUDED FROM EVIDENCE

1. *The so-called Koch Foundation "scandal" in Auburn's College of Business during 2008-2009, Doc. 47, ¶¶ 10-12, including:*

   a. *That Dr. Robert Lawson was hired by Auburn's Finance Department of the College of Business because he was a "Koch supporter";*

   b. *That Dr. Frank Mixon was "brought in" by "[t]he illegitimately imposed Chair of the Economics Department ... with Koch money...";*

   c. *That the Economics Department, at that time part of Auburn's College of Business, was administered in 2008 by Associate Dean of the College of Business Amit Mitra in "retaliation" for exposing the "Koch Foundation scandal;" and*

   d. *That Stern worked with a reporter named Jacque Kochak of The Auburn Villager to publish an article "exposing the Koch Foundation scandal."*

RESPONSE: This evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, and knowledge. Plaintiff is not offering the above evidence for the

truth of the matter asserted but for a litany of other things such as Defendants'

knowledge of these issues, Plaintiff's involvement, and how Defendants' handled

any response to these allegations, including its retaliatory and illegal actions toward

Plaintiff. Defendants admit in their Answer (Doc. 50) that there was a relationship

between Auburn and its College of Business and the Koch Foundation. In addition,

this evidence is relevant as to Plaintiff's claims for punitive damages.

> 2. *That the 2009 administrative move of the Department of Economics from the College of Business "… into the College of Liberal Arts… and also into the windowless Haley Center Basement…" by Auburn's then-Provost, Dr. Mary Ellen Mazey, was in retaliation for anything done or said by Stern. Doc. 47, ¶¶ 13–14. Also any reference that Dr. Mazey met with the Economics Department faculty and provided a memorandum regarding the administrative move. See Doc. 89-27, ¶ 3 (affidavit of Dr. Liliana Stern).*

RESPONSE: This evidence is relevant to Plaintiff's claims pursuant to Fed.

R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants'

motives, intent, and knowledge. Plaintiff is offering the above evidence as evidence

of Defendants' retaliatory and illegal actions toward Plaintiff. Defendants admit in

¶ 14 of their Answer that the Department of Economics was moved to the basement

of the Haley Center. (Doc. 50). In addition, this evidence is relevant as to Plaintiff's

claims for punitive damages.

> 3. *Any alleged issues surrounding Stern's tenure application in 2010. Doc. 47, ¶¶ 14-15.*

RESPONSE:  This evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b) to prove Defendants' motives, intent, and knowledge, and animus toward Dr. Stern for his earlier protected speech.

> 4.   The "forward curricular conspiracy." Doc. 47, ¶ 19.

RESPONSE: This evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, and knowledge. Plaintiff is not offering the above evidence for the truth of the matter asserted but for a litany of other things such as Defendants' knowledge, Plaintiff's involvement and protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

> 5.   "Discover[y] [of] the large cluster of football players in the Public Administration major" by John Urshel of the Baltimore Ravens football team. Doc. 47, ¶ 22.

RESPONSE: This evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, and knowledge. Plaintiff is not offering the above evidence for the truth of the matter asserted but for a litany of other things such as Defendants' knowledge, Plaintiff's protected speech, and Defendants' retaliatory and illegal

actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

6. *A so-called "institutional bribe" to Dr. Patricia Duffey by "Auburn Athletics." Doc. 47, ¶ 24.*

RESPONSE: This evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, and knowledge. Plaintiff is not offering the above evidence for the truth of the matter asserted but for a litany of other things such as Defendants' knowledge, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

7. *A statement allegedly made by Dr. Larry Crowley, the former chair of Auburn's University Senate, that Stern's allegations about the PUBA program were "explosive." Doc. 47, ¶ 26.*

RESPONSE:  This evidence is clearly relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b) to prove the embarrassing impact of Dr. Stern's protected speech, which also is probative of Defendants' motives in seeking to retaliate against Dr. Stern.

8. *That Stern met with Dr. Leath "right in the middle of the FBI-Chuck Person scandal." Doc. 47, ¶ 76.*

RESPONSE: This evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants'

motives, intent, admissions, opportunity, plan, absence of mistake, and knowledge. Plaintiff is not offering the above evidence for the truth of the matter asserted but for a litany of other things such as Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

> 9. *That there were "much better candidates" than Dr. Hardgrave to replace Dr. Boosinger as Provost, or that Defendant Leath did not interview "highly qualified people" before selecting Dr. Beverly Marshall as Auburn's Faculty Athletics Representative. Doc. 47, ¶¶ 83, 99.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is not offering the above evidence for the truth of the matter asserted that there were much better candidates or that Defendant Leath did not interview highly qualified people, but to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

> 10. *That Auburn's former Director of Athletics, Jay Jacobs, "was going to be receiving the largest retirement check in the History of the Retirement Systems of Alabama" and that former Assistant Director of Athletics Dr. Gary Waters "was receiving very special*

*raises to inappropriately increase his retirement check." Doc. 47, ¶ 93.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is not offering the above evidence for the truth of the matter asserted but to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff, and to demonstrate the institutional imbalance between athletics and academics. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

11. *That Auburn's Economics Department is "clearly the most outstanding department in the CLA" but is nevertheless treated "poorly." Doc. 47, ¶ 104.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 803(6) and (8) and 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages and to prove retaliation and that Defendants' proffered reasons for Dr. Stern's removal as Chair are pretextual.

12. *Any alleged retaliation against Stern committed by Dr. Hyeongwoo Kim. This includes Dr. Kim's not appointing Stern to departmental committees, not allowing Stern to be considered for a University Senator position, not nominating Stern for committees within Auburn's College of Liberal Arts, the so-called "removal" of Stern from a dissertation committee, any alleged issues with Stern's 2019–2020–2021 raise or bonus, restricting Stern's access to Auburn's on-line computer system known as Banner, and interactions Dr. Kim may have had with other Auburn employees. Doc. 47, ¶¶ 115, 118, 122-23, 125-26.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages and retaliation against Dr. Stern.

13. *That Stern was told by an unidentified student that the student had been informed that Stern "was taking the semester off as department chair to pursue research that was consuming his time." Doc. 47, ¶ 116.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. This evidence is also admissible pursuant to 801(d)(2)(B)(D)(E). Plaintiff is not offering the above evidence for the truth of the matter asserted but to show Defendants' retaliatory

animus and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

      14. *That Dr. Alan Seals, another professor within Auburn's Economics Department, pursued a grievance against Defendant Aistrup and Defendant Hardgrave. Doc. 47, ¶ 117.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

      15. *That the Defendants conspired among themselves or with others to achieve the ends described in Stern's complaint.*

RESPONSE: Plaintiff does not oppose limiting testimony regarding claims which previously have been voluntarily dismissed or dismissed by the Court.

**B.**    **Certain Allegations Made in Stern's Deposition and in his Filings in This Case are Properly Excluded from Evidence**

      16. *Any alleged retaliation by Dr. Aditi Sengupta as discussed in Stern's summary judgment opposition brief. Doc. 90 at 71. According to Stern, Dr. Sengupta, another professor within the Economics Department, allegedly told the Department's then-administrative assistant Jennifer Bruno "to no longer send students to Dr. Stern because he 'was no longer than [sic] Chair and would feel embarrassed.'" While these acts are discussed in Stern's complaint, they are attributed to Dr. Kim and not to Dr. Sengupta. Doc. 47, ¶ 126.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. This evidence is also admissible pursuant to 801(d)(2)(B)(D)(E). Plaintiff is not offering the above evidence for the truth of the matter asserted but to show Defendants' retaliatory animus and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

17. *Any alleged retaliation against a third party or non-party because of Stern's alleged speech, their own speech, or because they "supported" Stern. During the course of his deposition, Stern testified that one or more of the Defendants retaliated or directed someone else to retaliate against the below individuals in the described ways:*

a. *Stern's wife, Dr. Liliana Stern, also an Associate Professor of Economics at Auburn, was not asked to serve as a University Senator for a second term and was not put on departmental committees;*

b. *Associate Professor of Economics Alan Seals was not put on departmental committees following his removal as Graduate Program Officer ("GPO") for the Department of Economics and that he was removed as the GPO by Dean Aistrup in May 2018;*

c. *Economics Professor Randy Beard was not put on Economics Department committees and was removed from the College of Liberal Art's Budget Committee;*

d. *Administrative Assistant for Economics Jennifer Bruno was reprimanded by Dr. Kim and transferred away from the Economics Department; and*

e. *Dr. Joe Majdalani was removed as Chair of the Aerospace Engineering Department of Auburn's College of Engineering.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

18. *The alleged "criminal conspiracy" to withhold certain documents from Auburn's response to an Alabama Open Records Act ("ORA") request (sometimes referred to in this lawsuit as a "FOIA" request) in 2015, including the allegedly "incomplete" ORA response.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

19. *Stern's contention that Defendants Aistrup and Boosinger somehow retaliated against him because, he says, during the 2017 move of the Economics Department's offices from the Haley Center basement into newly-renovated accommodations in Miller Hall, the furniture order for his office "was done incorrectly" and that the "crew doing installations destroyed his office." Stern claims that his "personal office was left damaged and without furniture for him to use for weeks." Doc. 90 at 53.*

13

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 803 (6) and (8) and 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, Defendants' retaliatory and illegal actions toward Plaintiff, and that Defendants' proffered reasons for removing Plaintiff as Chair are pretextual. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

> 20. *Any mention or reference that Stern was the "best" Chair and merited the highest raises of any CLA chair and the Economics was the "best" department in CLA. See Doc. 83-01, 433:19–434:13. Stern's purported damages calculation based on his being the "best" is based on pure speculation and subjective belief and is without evidentiary support. Even if the suggested calculations or comparisons are probative, they are due to be excluded because they are more prejudicial than probative, are confusing of the issues, and not based on Stern's personal knowledge as to the raises and/or performance of the other CLA chairs. See Fed R. Evid. 401, 403, 602.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 803 (6) and (8) and 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, Defendants' retaliatory and illegal actions toward Plaintiff, and that Defendants' proffered reasons for removing

Plaintiff as Chair are pretextual.  In addition, this evidence is relevant as to Plaintiff's

claims for punitive damages.

### C.   CERTAIN MATTERS DECIDED ON AT SUMMARY JUDGMENT ARE PROPERLY EXCLUDED FROM EVIDENCE

21. *Any complaints that Dr. Stern, his wife (Dr. Lilianna Stern), Dr. Seals, or Dr. Seals' wife (Dr. Sara Seals) have regarding Dr. Kim, including his being appointed as Interim Chair, being elected as Chair, and any actions he might have taken (or not taken) in his capacity of Interim Chair or Chair of the Economics Department. Such actions include: (a) alleged attempts to have staff keep information and students away from Dr. Stern, (b) excluding Stern (or Dr. Liliana Stern) as a Senator for the University Senate, (c) removing Stern's access to budgetary information through the Banner system, (d) failing to appoint Stern (or others) to Economics departmental committees, and (e) removing Stern (and Dr. Randy Beard) from Shuwei "Jolly" Zhang's dissertation committee.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed.

R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants'

motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering

this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's

protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In

addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

22. *Any mention of the November 2015 Alabama Gazette article titled All the Speaker's Men and the Collapse of AU Athletics.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed.

R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants'

motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering

this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, Defendants' retaliatory and illegal actions toward Plaintiff, and the institutional imbalance at Auburn University regarding athletics versus academics. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

23. *Any mention of the March 2018 Alabama Gazette article titled The Auburn Greed.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

24. *Any mention of two of the eight time-barred claims Stern pursued in the Second Amended Complaint.*

RESPONSE: Plaintiff concurs with Defendants' motion to the extent he cannot seek damages for eight retaliatory acts that the Court determined were time-barred and cannot form the basis of an actionable First Amendment claim. To the extent Defendants are attempting to exclude evidence of retaliation to prove other claims that are actionable, Plaintiff opposes. This evidence is relevant to the issue of the Defendants' retaliatory motive or intent. Fed. R. Evid. 404(b) allows for the admissibility of evidence of other acts of discrimination or retaliation similar to the

16

discrimination charged in order to show motive or intent, provided the relevance of the evidence outweighs its tendency to prejudice the opponent of the evidence unfairly.

The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to also show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

### D.   OTHER MATTERS PROPERLY EXCLUDED FROM EVIDENCE

25. *The reasons why Defendant Leath resigned as Auburn's President in June 2019.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

26. *The attempted "no confidence" vote by Auburn's University Senate against Defendant Hargrave.*

17

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

27. *The reasons why Defendant Aistrup resigned as Dean of Auburn's College of Liberal Arts in July 2021.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

28. *Any offers of compromise or settlement by either party.*

RESPONSE:  Plaintiff does not oppose limiting testimony regarding offers of settlement or discussions regarding the same.

29. *Any mention of why the Public Administration program at Auburn was not closed.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response or lack thereof, Plaintiff's protected speech, Defendants' retaliatory and illegal actions toward Plaintiff, and the institutional imbalance between athletics and academics. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

30. *Any mention of the lawsuit filed by Travis Thomas against Auburn University for race discrimination.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages. In addition, reference to this case is relevant and admissible to demonstrate the institution's callous disregard for the law and fair employment practices, and a culture of retaliation when employees engage in protected activity, to include lowered performance reviews and lower raises. This case also involves Auburn athletics and new examples of the athletic tail wagging the academic dog.

31. *Any mention of the 2019-2020 outside investigation into whether the Department of Economics was currently ready for an Academic Program Review ("APR").*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

32. *Any mention of the lawsuit filed by Dr. Alan Seals against Auburn University administrators, Dr. Seals' claims or allegations raised in that lawsuit, or Dr. Seals' interaction with any of the Defendants that did not involve Stern.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff. In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

33. *Any mention of the lawsuit filed by Dr. Joseph Majdalani against Auburn University, Dr. Bill Hardgrave, Dr. Chris Roberts, and other current or former Auburn personnel.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants'

motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

34. *Any mention or reference to Dr. Jay Gogue's and/or Dr. Hardgrave's statements to Dr. Liliana Stern in December 2019 and February 2020 concerning Stern's post-2018 raises and committee assignments and Dr. Alan Seals' 2019 raise.*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

35. *Statements made by Dr. Emmett Winn and Ms. Jennifer Bruno as stated in Dr. Alan Seals' affidavit submitted in support of Stern's summary judgment opposition..*

RESPONSE: The evidence is relevant to Plaintiff's claims pursuant to Fed. R. Evid. 401 and admissible pursuant to Fed. R. Evid. 404(b), to prove Defendants' motives, intent, admissions, opportunity, plan, and knowledge. Plaintiff is offering this evidence to show Defendants' knowledge, Defendants' response, Plaintiff's protected speech, and Defendants' retaliatory and illegal actions toward Plaintiff.  In addition, this evidence is relevant as to Plaintiff's claims for punitive damages.

Respectfully submitted,

*/s/ John D. Saxon*
John D. Saxon

**OF COUNSEL:**

**JOHN D. SAXON, P.C.**
2119 Third Avenue North
Birmingham, AL 35203
(205) 324-0223
jsaxon@saxonattorneys.com

Alicia K. Haynes
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
(205) 879-0377
akhaynes@haynes-haynes.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of September, 2022, a true copy of the above and foregoing has been electronically filed with the CM/ECF system which serves notice of the following counsel of record.

Aria B. Allan
David R. Boyd
John G. Smith
Charles A. Burkhart
BALCH & BINGHAM LLP
P.O. Box 78
Montgomery, AL 36101
aallan@balch.com
dboyd@balch.com
jgsmith@balch.com

Jamie S. Hammer
Melissa M. White
AUBURN UNIVERSITY
182 South College Street
101 Samford Hall
Auburn, AL 36849
jsh0073@auburn.edu
mmw0012@auburn.edu


*/s/ Alicia K. Haynes*
OF COUNSEL