IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DR. MICHAEL L. STERN, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 3:18-CV-00807-CLM-JTA |
| DR. STEVEN LEATH, ET AL., | ) |
| Defendants. | ) |

### BENCH BRIEF REGARDING HEARSAY ISSUES

Defendants Dr. Joseph Aistrup, former Dean of the College of Liberal Arts at Auburn University, and Dr. Christopher B. Roberts, President of Auburn University (collectively, "Defendants")[1], respectfully submit this Bench Brief Regarding Hearsay Issues (the "Brief"). In support, Defendants state as follows:

#### OVERVIEW

Dr. Jason Hicks ("Dean Hicks"), Dean of the College of Liberal Arts at Auburn University ("Auburn"), holds the responsibility of appointing the Chair of the Department of Economics (the "Department"), one of the 14 units within the College. While he has sole appointment authority, he often consults faculty members to inform his decision. *See* Auburn University Faculty Handbook, § 2.3.2

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Dr. Christopher R. Roberts is substituted, in his official capacity only, for any claims relating to prospective injunctive relief asserted against the President of Auburn University. Pursuant to the Court's Order (Doc. 123-1), Dr. Steven Leath has been dismissed as a defendant.

1

("Department heads/chairs are appointed by the dean.").[2] As a professional administrator with more than 20 years' experience in higher education, Dean Hicks understands that it is his job to ensure the Department has effective leadership and administration for instruction, research, and service of the faculty and that the students (undergraduate and graduate level) receive a high-quality education. It benefits him to consider the opinions of faculty members and students when making such significant decisions.

During the evidentiary hearing on June 1, 2023 (the "Hearing"), Defendants called Dean Hicks to testify regarding his professional opinion as to the potential reinstatement of Stern as Chair of the Department. As anticipated, during Dean Hicks' testimony, Stern objected to the Survey and Dean Hicks' discussion of information gleaned from faculty members as hearsay; however, as more fully explained below, the Survey and related testimony are admissible pursuant to Federal Rules of Evidence 803(3) and 803(21), and further comply with Rule 404.

---

[2] Auburn University, Auburn University Faculty Handbook, *available at* https://sites.auburn.edu/admin/universitypolicies/Policies/AuburnUniversityFacultyHandbookPolicies.pdf (last accessed May 31, 2023). This section is also marked as evidence as Hearing Exhibit DX 22.

## ARGUMENT AND AUTHORITY

I. **Faculty members' opinions used in Dean Hicks' decision-making process and ultimate opinion are admissible pursuant to Fed. R. Evid. 803(3)**.

The results of a "Department Climate Survey" (the "Survey")[3] and related testimony, as well as comments from meetings between Dean Hicks and faculty members of the Economics Department, are admissible as present mental impressions under Rule 803(3). Pursuant to Rule 803(3):

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . (3) **Then-Existing Mental, Emotional, or Physical Condition.** A Statement of the declarant's then existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

(emphasis in original). Generally, courts have held that surveys and related testimony are admissible as present mental impressions. *See BoDeans Cone Co., L.L.C. v. Norse Dairy Systems, L.L.C.*, 678 F. Supp. 2d 883 (N.D. Iowa 2009) (holding surveys admissible under 803(3) because it showed a present mental state);

---

[3] The Survey, distributed by Interim Dean Ana Franco-Watkins in late spring/early summer of 2022, asked numerous questions of the departmental faculty relating to job satisfaction, the climate of the Department, interpersonal conflicts within the Department, and support for the Department's mission (teaching and research). The Survey also provided the faculty members an opportunity to submit written responses to several questions. The Survey was introduced and admitted as Defendants' Hearing Exhibit 3. A copy of the Survey is attached to this memorandum as **Exhibit A**.

*Shering Corp. v. Pfizer Inc.*, 189 F. 3d 218 (2d Cir. 1999) (same); *Friesland Brands, B.V. v. Vietnam Nat. Milk, Co.*, 221 F. Supp. 2d 457 (S.D.N.Y. 2002) (same); *Alston v. Va. High School League, Inc.*, 144 F. Supp. 2d 526 (W.D. Va. 1999) (same); *Fed. Trade Comm. v. Fleetcor Tech., Inc.*, 620 F. Supp. 3d 1268, n. 13 (N.D. Ga. 2022) (recognizing 803(3) as it pertains to surveys). The Survey here is no different. At the time faculty members completed the Survey, they were conveying their present thoughts regarding the Department, including the climate, collegiality, and conflicts. The Survey and related testimony are being "offered to establish facts about the [faculty members'] mental impressions." *BoDeans*, 678 F. Supp. 2d at 902. The Survey and related testimony are not being used "to prove the facts believed," but instead to show that Dean Hicks' decision and opinions were informed by the Survey information and, in fact, are inseparable from the information. *Id.* The Survey and related testimony are, therefore, admissible under Rule 803(3).

Dean Hicks also had individual meetings with faculty members regarding the state of the Department and its future (including faculty development, hiring, and leadership). Through these meetings, he gleaned information that also impacted his decision-making and final opinion on the matter, so much so that his decision-making and opinion merged with the needs of faculty and the impact of the student body. Accordingly, the faculty members' statements during these meetings further qualify as present mental impressions because they are being used by Dean Hicks'

4

to show how the faculty members' statements informed his decision-making and final opinion. Comments from meetings between Dr. Hicks and faculty members are therefore admissible under Rule 803(3).

II.     **Faculty members' opinions used in Dean Hicks' decision-making process and ultimate opinion are admissible pursuant to Fed. R. Evid. 803(21)**.

Faculty members' opinions conveyed to Dean Hicks in individual meetings and in the Survey are admissible under Rule 803(21). Pursuant to Rule 803(21):

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . **Reputation Concerning Character.** A reputation among a person's associates or in the community concerning the person's character.

(emphasis in original). "When invoking this exception, the community from which the reputation is drawn must be 'well-defined,' laying a trustworthy foundation. *Donald v. UAB Hospital Management, LLC*, No. 2:14-cv-727-WMA, 2015 WL 5915323, at *3 (N.D. Ala. Oct. 9, 2015) (quoting *Blackburn v. United Parcel Serv., Inc.*, 179 F. 3d 81, 100 (3d Cir. 1999)). Dean Hicks' testified regarding comments made from faculty members of the Department—specifically, from multiple tenured or tenure-track voting members. The community from which the reputation is drawn is therefore well-defined, and Dean Hicks is intimately familiar with the community as the Dean. The comments regarding Stern's character, obtained through individual meetings between Dean Hicks and the faculty members and from the Survey, are relevant to Dean Hicks' decision-making and

5

ultimate decision regarding the recommendation of a national search for a Department Head and, more importantly, to the impact on the functioning and long-term health of the Department were Stern to be instated as Chair. Such comments are, therefore, admissible under Rule 803(21). As more fully explained below, the character evidence is not introduced to prove that Stern acted in conformity with a particular character trait on a particular occasion, but rather to show the comments' impact on Dean Hicks. Thus, faculty members' opinions used in Dean Hicks' decision-making and ultimate decision are admissible under Rule 803(21).

III. **Faculty members' opinions used in Dean Hicks' decision-making process and ultimate opinion are more probative than prejudicial pursuant to Fed. R. Civ. P. 403 and 404.**

Even if the Survey and related testimony are admissible pursuant to Rule 803(21), the evidence must still comply with Rule 404(a), which provides: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See also Jackson v. Local Union No. 211 of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Servs. Workers Int'l Union, AFL-CIO-COC, et al.*, No. CV-07-JEO-0461-S, 2009 WL 10704345, at *4 (N.D. Ala. Nov. 2, 2009) ("[W]hile Rule 803(21) allows hearsay evidence to prove character, it does so only where character evidence is admissible to begin with, and Rule 404(a) provides that character evidence is not admissible to prove action in conformity therewith.")

(quoting *L'Etoile v. New England Finish Systems, Inc.*, 575 F. Supp. 2d 331, n.7 (D.N.H. 2008)). Here, the Survey and related testimony, as well as the comments from the individual faculty meetings from August 2022, are not being used to prove that Stern's behavior on a particular occasion was in accordance with a specific character trait. Instead, this evidence is being used to show that Dean Hicks' decision was informed by the Survey and the faculty meetings, which included discussions of Stern's character. The Survey and related testimony, therefore, comply with Rule 404.

## CONCLUSION

For the foregoing reasons, the Survey and related testimony are admissible pursuant to Federal Rules of Evidence 803(3) and 803(21), and further comply with Rule 404. Accordingly, the Court should consider Dean Hicks' testimony regarding the Survey and the conversations he has had with Economics Department faculty members.

Respectfully submitted on this the 1st day of June, 2023.

22787479.2

              */s/ Aria B. Allan*
              One of the Attorneys for Defendants

**OF COUNSEL:**

David R. Boyd (ASB-0717-d52d)
dboyd@balch.com
John G. Smith (ASB-8146-T68J)
jsmith@balch.com
Aria B. Allan (ASB-2064-E10Q)
aallan@balch.com
**BALCH & BINGHAM LLP**
Post Office Box 78
Montgomery, AL  36101
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

Charles A. Burkhart (ASB-7825-T76C)
cburkhart@balch.com
**BALCH & BINGHAM LLP**
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203
Telephone: (205) 226-8753
Facsimile: (205) 488-5689

Jaime S. Hammer (ASB-1557-C00Z)
Email: jhammer@auburn.edu
M. Maran White (ASB-8691-I64W)
Email: mmw0012@auburn.edu
**AUBURN UNIVERSITY**
Office of General Counsel
101 Samford Hall
Auburn, AL 36849
Telephone:  (334) 844-5176

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following CM/ECF participant(s) electronically on this the 1st day of June, 2023:

John D. Saxon
jsaxon@saxonattorneys.com
**JOHN D. SAXON, P.C.**
2119 3rd Avenue North
Birmingham, AL  35203

Alicia K. Haynes
akhaynes@haynes-haynes.com
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226

Cynthia Forman Wilkinson
wilkinsonefile@wilkinsonfirm.net
**WILKINSON LAW FIRM, PC**
1717 3rd Avenue North, Suite A
Birmingham, AL 35203

/s/Aria B. Allan
Of Counsel

22787479.2