UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DR. MICHAEL L. STERN,<br>    Plaintiff,<br><br>v.<br><br>DR. CHRISTOPHER B.<br>ROBERTS, et al.,<br>    Defendants. | Case No. 3:18-cv-807-CLM |

# ORDER

Over two years ago, a jury found that the former dean of Auburn University's College of Liberal Arts, Joseph Aistrup, retaliated against Dr. Michael Stern by (a) removing Dr. Stern as Chair of the Department of Economics in 2018, (b) denying Dr. Stern a raise for the 2018–2019 academic year, and (c) denying Dr. Stern a one-time merit supplement.

Because Dr. Stern prevailed, the court awarded Dr. Stern $795,765.47 in attorney's fees and $18,462.26 in litigation expenses under 42 U.S.C. § 1988. Dr. Stern now moves to alter or amend the order awarding fees and expenses, asserting that the court erroneously deducted certain claimed fees and expenses from its award. (Doc. 283; Doc. 287). For the reasons stated within, the court **DENIES** the motion to alter or amend (doc. 283; doc. 287).

## BACKGROUND

Dr. Michael Stern is a current tenured professor at Auburn University and former Chair of Auburn's Department of Economics. Dr. Stern brought this First Amendment retaliation case against several Auburn University officials, asserting that various alleged adverse employment actions were retaliation for Dr. Stern speaking out about the alleged clustering of student athletes in Auburn's Public Administration major.

After a 10-day trial, a jury found that Dean Aistrup removed Dr. Stern from his Chair position, denied Dr. Stern a raise for the 2018-2019 academic

year, and prevented Dr. Stern from receiving a merit supplement in December 2018 in retaliation for Dr. Stern speaking out about Public Administration. In a § 1983 case like this one, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" awarded. *See* 42 U.S.C. § 1988(b). So Dr. Stern petitioned the court for an award of $1,247,061.25 in attorney's fees and $26,047.66 in expenses. (Doc. 254). The court ultimately awarded Dr. Stern $795,765.47 in attorney's fees and $18,462.26 in litigation expenses. (Doc. 280).

## DISCUSSION

Dr. Stern's motion to alter or amend asserts that the court erroneously deducted certain claimed fees and expenses from its award of attorney's fees and expenses.[1] Because Dr. Stern filed his motion within 28 days of the court entering its attorney's fees award, the court construes the motion as a motion under Fed. R. Civ. P. 59(e). "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (cleaned up). And "[a] Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (cleaned up). Indeed, "[r]econsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose of Rule 59." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010).

The court will address the arguments raised in the motion to alter or amend in the order that they were raised in the motion.

### A. The court applied the appropriate standard.

Dr. Stern first asserts that the court applied the wrong standard in assessing the motion for attorney's fees because the court reduced the claimed

---

[1] In their response to the motion to amend, Defendants assert that attorneys Alicia Haynes and Cynthia Wilkinson lack standing to seek to enlarge the attorney's fees awarded Dr. Stern. Dr. Stern, through new counsel, has since informed the court that he too believes that the court should increase the amount of the fees, costs, and expenses awarded. (Doc. 287). So the court needn't address whether Ms. Haynes and Ms. Wilkinson have standing to seek an increased award.

2

hours by 5% for unnecessary hours and unsuccessful claims and then by another 10% to account for Dr. Stern's limited success.

The court applied the appropriate standard. "The starting point in fashioning an award of attorney's fees" is to calculate the lodestar by multiplying "the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). To determine the number of hours reasonably expended, the court must exclude "excessive, redundant or otherwise unnecessary hours . . . from the amount claimed." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (quotations omitted). "After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained." *Id.* at 1302. "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.* "[T]he court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." *Id.*

The court followed this procedure in assessing Dr. Stern's attorney's fees petition. In calculating the lodestar, the court identified several claimed hours that it found excessive, redundant, or otherwise unnecessary. (Doc. 280, pp. 22–29). After listing examples of several hours that fell within this category, the court found that a 5% across-the-board reduction in claimed hours was needed to address the court's concerns about excessive, duplicative, and unnecessary hours being billed. (*See id.*). But the court made clear that the only hours it considered spent on unsuccessful claims were the hours spent on: (1) Dr. Stern's belated request for mental anguish damages, (2) the parties' joint motion to contact jurors, and (3) a potential expert witness. (*Id.*, p. 29). The court did not consider the time Dr. Stern's attorneys spent on any of his retaliation or conspiracy claims as time spent on unrelated, unsuccessful claims because those claims shared "a common core of facts and related legal theories" with the retaliation claims Dr. Stern succeeded on. Instead, the court only considered the partial and limited nature of Dr. Stern's success in deciding whether to adjust the lodestar for results obtained.

The court thus properly excluded "excessive, redundant or otherwise unnecessary" hours in computing the lodestar, and only considered "the

3

necessity of an adjustment for results obtained" after the lodestar had been calculated. *See Norman*, 836 F.2d at 1301–02. No double counting occurred.

### B. The court properly reduced the award based on Dr. Stern's limited success.

Dr. Stern next objects to the court's rationale for applying a downward adjustment to the lodestar. This argument has four parts.

*1. No contradiction*: First, Dr. Stern says that the court's adjustment of the lodestar contradicts its earlier finding that each of Dr. Stern's retaliation claims involved a common core of facts. If a plaintiff's successful and unsuccessful claims are related, a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). But when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. So "if the plaintiff obtained only partial or limited success," it is within this court's discretion to "reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578–79 (11th Cir. 1987) (quotations omitted).

After comparing the scope of this litigation with the partial relief Dr. Stern obtained, the court found that the lodestar needed to be reduced to reflect the results obtained. (Doc. 280, pp. 31–32). So even though the court found that Dr. Stern's claims were related, it was entitled to adjust the lodestar to account for the limited nature of Dr. Stern's success.

*2. Defendants objected*: Dr. Stern also says that the court erred in considering hours other than those listed in Defendants' partial success objections (*see* doc. 265-9) in deciding that a 10% reduction to the lodestar was appropriate. Dr. Stern has cited no authority that says that the court is limited to considering the specific objections made by the opposing party in adjusting the lodestar. And if a plaintiff obtained partial or limited success that makes the lodestar amount excessive, the court must adjust the lodestar. *See Norman*, 836 F.2d at 1302.

Plus, Defendants did not assert that only the time entries listed in Doc. 265-9 should be excluded to account for Dr. Stern's limited success. Instead, Defendants asked the court to apply a 20% across-the-board reduction. (*See* Doc. 265, pp. 30–34; Doc. 265-11). And Defendants' argument that this adjustment was needed did not focus only on Dr. Stern's efforts to obtain equitable relief, the focus of Defendants' partial success exhibit. Defendants also emphasized that "of the more than 20 claims Dr. Stern made, he succeeded on only two retaliation claims against one Defendant—less than 10% of his claims." (Doc. 265, p. 36). While the court found that reducing the lodestar by 20% didn't give Dr. Stern enough credit for his success, the court agreed with Defendants that some reduction was needed because the scope of the litigation didn't match the results obtained.

To the extent that Dr. Stern argues that the court's 10% lodestar reduction was excessive because it encompasses claimed hours that Defendants didn't object to as unnecessary or related to Dr. Stern's limited success, both the Supreme Court and Eleventh Circuit have rejected the argument that district courts must eliminate fees only for hours specifically spent on unsuccessful claims. *See Popham*, 820 F.2d at 1581. Instead, a court that finds the lodestar amount unreasonable in relation to the success achieved, "may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37. The court found that a 10% reduction to the lodestar was needed to account for Dr. Stern's limited success, so it reduced the lodestar by that amount.

*3. Excellent result/public benefit*: Dr. Stern next asserts that the court erred in not considering whether he achieved an excellent result and if his lawsuit provided a public benefit. The court considered whether Dr. Stern obtained an excellent result by noting: "Dr. Stern succeeded with his main goal—to show that an Auburn official retaliated against him for speaking out about alleged clustering in the Public Administration Major. And the claim that Dean Aistrup retaliated against Dr. Stern by removing him as Chair of the Economics Department was one of the most important claims litigated." (Doc. 280, p. 31). Still, the court found that a modest partial success reduction was needed because "the expenditure of counsel's time was [not] reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 436.

5

To be sure, the court did not specifically address the public benefit provided by Dr. Stern succeeding on his claims against Dean Aistrup. As Dr. Stern notes, "[t]he affirmation of constitutional principles produces an undoubted public benefit" because "[w]hen courts affirm the constitutional rights of citizens, public officials are deterred from violating other citizens' rights in the future." *Popham*, 820 F.2d at 1580. But the "enforcement of a constitutional right [does] not foreclose a reduction in the lodestar amount." *Id*. And while the court finds that Dr. Stern's success provided a public benefit by discouraging officials from retaliating against subordinates who engage in protected speech, the court believes that reducing the lodestar amount by 10% was still appropriate. With this litigation Dr. Stern sought to show that various Auburn University officials were retaliating against him at almost every turn for speaking out against Public Administration. But he only managed to show that Dean Aistrup retaliated against him by removing him as Economics Department Chair and denying his 2018-2019 raise and one-time merit supplement. So Dr. Stern did not establish that there was an institutional practice of Auburn University officials violating employees' First Amendment rights. And unlike other § 1983 cases against public officials, Dr. Stern's suit directly benefits only a small class of people—Auburn University employees. Thus, the court finds that even though Dr. Stern's suit provided a public benefit, the 10% reduction to account for Dr. Stern's partial success is still warranted.

*4. Reasons for reduction*: Dr. Stern's final objection to the court's downward adjustment of the lodestar is that the court improperly reduced the lodestar simply because he didn't prevail on every claim he raised. The court cannot adjust the lodestar by applying "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id*. at 1579. But "comparing the number of successful claims to the number of claims brought . . . is germane to determining the degree of the plaintiff's success." *Id*.; *see also Hensley*, 461 U.S. at 436 ("[H]ad respondents prevailed on only one of their six general claims . . . a fee award based on the [total] claimed hours clearly would have been excessive.").

In deciding to reduce the lodestar amount by 10%, the court compared the hours Dr. Stern's attorneys spent litigating Defendants' summary judgment motion and preparing for trial with the overall relief Dr. Stern

obtained. (Doc. 280, pp. 31–32). The court found that Dr. Stern succeeded with his main goal by showing that an Auburn official retaliated against him for speaking out about alleged clustering of student athletes in the Public Administration major. (*Id.*, p. 31). But the court determined that the lodestar amount was unreasonably high considering the partial success Dr. Stern obtained. In doing so, the court noted that only 3 of Dr. Stern's 23 retaliation claims made it to trial, the court dismissed Dr. Stern's conspiracy claims at summary judgment, and Dr. Stern's attorneys would have spent less time preparing for trial if they had limited his case to the two successful claims. (*Id.*, p. 32). It was proper for the court to consider these factors in determining that the lodestar amount was "excessive in relation to the plaintiff's relief." *See Popham*, 820 F.2d at 1579–80.

### C. The court needn't award the full lodestar.

Dr. Stern next says that the court improperly reduced the lodestar by reconsidering factors that it had considered in reaching the lodestar amount. The court rejects this argument for two reasons. First, this argument includes no analysis or explanation of what factors Dr. Stern believes the court considered in both calculating the lodestar and applying a 10% reduction to the lodestar amount. So the court finds that Dr. Stern has waived this argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue.").

Second, as explained above, the factors the court considered in reaching the lodestar amount are different from the factors the court considered in deciding to apply a 10% partial success reduction. Thus, even if Dr. Stern hadn't waived this argument, it would lack merit.

### D. Lack of success at summary judgment was relevant.

Dr. Stern next asserts that (a) none of Ms. Haynes, Ms. Wilkinson, or Mr. Guerrier's hours should have been reduced because of Dr. Stern's partial success at summary judgment, and (b) it would be improper for the court to reduce the lodestar by 10% simply because the court believes Dr. Boosinger and Dr. Hardgrave should have been dismissed before trial.

7

As explained, the court did not reduce the lodestar amount by 10% simply because the court dismissed most of Dr. Stern's claims at summary judgment and Dr. Stern wasn't ultimately successful in convincing the jury that Dr. Boosinger or Dr. Hardgrave retaliated against him. Instead, the court applied a partial success adjustment because the court found "the expenditure of counsel's time was [not] reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 436. Dr. Stern's lack of success at summary judgment was relevant to this determination. *See Popham*, 820 F.2d at 1579. And the overall success of the plaintiff, not the overall success of his individual attorneys, is what's relevant to whether a partial success reduction is warranted. *See Hensley*, 461 U.S. at 436 ("If, on the other hand, *a plaintiff* has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." (emphasis added)). Plus, the court "may simply reduce the award to account for the [plaintiff's] limited success" and needn't "identify specific hours that should be eliminated." *Id.* at 436–37. As a result, the court properly applied a 10% across-the-board reduction to account for the court's concerns that the overall time spent on this case wasn't proportionate to the success achieved.

### E. Many time entries were excessive and duplicative.

Dr. Stern also says that the court erred in reducing his attorney's claimed hours by 5% to account for hours the court found were excessive and duplicative. Dr. Stern first says that the court had no basis to find that Ms. Haynes and Ms. Wilkinson billing more than 18 hours in a given day was excessive. "[F]ee applicants" must "exercise 'billing judgment,'" and "may not be compensated for hours spent on activities [they] would not bill a client of means who was seriously intent on vindicating similar rights." *Norman*, 836 F.3d at 1301. As the court explained, it is unlikely that an attorney exercising billing judgment would bill a client more than 18 hours per day for several days of trial. So the court appropriately found that it was improperly excessive for Ms. Haynes and Ms. Wilkinson to bill more than 18 hours for any given day.

To the extent that Dr. Stern suggests that applying a 5% across-the-board reduction to account for excessive, duplicative, and redundant time entries was improper, the court notes that the examples of time entries that

8

the court found excessive were not exhaustive. And "where a fee application is voluminous, an hour-by-hour analysis of a fee request is not required." *Loranger*, 10 F.3d at 783. Instead, the court may apply "across-the-board percentage cuts in either the number of hours claimed or in the final lodestar figure" as long as the court provides "a concise but clear explanation of its reasons for the reduction." *Id.*

Dr. Stern's fee application was nearly 400 pages. (Doc. 254). Defendants' response was nearly 300 pages. (Doc. 265). And Dr. Stern replied by adding more than 700 extra pages of exhibits. (Doc. 276). Requiring the court to explain its decision about 1000+ pages of argument and exhibits, line-by-line, would have taken hundreds of hours—in a case the court has already spent hundreds of hours on at trial, at post-trial hearings, and pouring over the trial record for other post-trial motions.

This undertaking would have been both "impractical and a waste of judicial resources." *See Loranger*, 10 F.3d at 783. So the court opted to explain its general thoughts on the type of time entries that were excessive and then reduce the claimed hours by a percentage that the court found adequately accounted for excessive and duplicative time entries. The court is confident that a reviewing court that sees the record this court was dealing with will find that this court acted well within its discretion when it reduced Dr. Stern's claimed hours this way—once it recovers from the initial shock of the sheer volume of activity that has occurred in a case that closed two years ago.

### F. The court properly deducted litigation expenses.

Dr. Stern finally objects to the court disallowing several litigation expenses claimed in his litigation expense report. Dr. Stern did not respond to Defendants' objections to his claimed expenses or explain the reason for claiming many expenses in his expense report. Even now, Dr. Stern doesn't explain why the court erred in not allowing him to recover legal research or postage expenses or grapple with the court's finding that he failed to meet his burden to show that these expenses weren't routine office overhead. The court thus finds Dr. Stern's belated arguments related to litigation expenses improper under Rule 59(e). *See Arthur*, 500 F.3d at 1343 ("A Rule 59(e) motion

cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.").

## CONCLUSION

For these reasons, the court **DENIES** the motion to alter or amend (doc. 283; doc. 287) the attorney's fees order.

**Done** and **Ordered** on December 11, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE