# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

**DR. MICHAEL L. STERN,**
     Plaintiff,

**v.**

**DR. CHRISTOPHER B. ROBERTS, et al.,**
     Defendants.

**Case No. 3:18-cv-807-CLM**

## ORDER

Dr. Michael Stern prevailed in a jury trial against Dr. Joseph Aistrup and was awarded compensatory and punitive damages. The court entered final judgment, and the clerk closed this case, 18 months ago. Since then, Stern and his trial attorneys have argued about how to distribute the attorney's fees this court later awarded Stern under 42 U.S.C. § 1988.

The attorneys asked this court to settle the argument by filing claims and statements of attorney's lien under Alabama law. (Docs. 269, 270). The court acknowledged that it *could* decide their state-law lien claims but chose not to exercise supplemental jurisdiction so that state courts could decide state-law issues. (Doc. 280). Out of respect for the parties and the state system, the court did not articulate the concerns it had with the parties' fee arrangements. The court said only that it did not want to "guess how the state courts would interpret this not so straight forward contingency fee arrangement." *Id.*, p. 41.

Two of the three attorneys now argue that the court *must* declare the parties' rights and decide the contractual dispute over fees because Rule 24(a)(2) gives attorneys the right to intervene against their client when fees are at stake. (Doc. 290). The court **DENIES** their motion. Below, the court explains why intervention of right under Rule 24(a)(2) is not viable in this closed case and why the attorneys' dispute with Stern raises thorny questions about attorney-client fee arrangements that are best decided by Alabama courts and the Alabama State Bar, not a federal district court.

# I.

## BACKGROUND

As its title suggests, this case pitted Auburn University professor Dr. Michael L. Stern against a group of university officials who Stern alleged retaliated against him for speaking out about the clustering of Auburn athletes in the College of Liberal Arts. The court uses the past tense "pitted" because the clerk closed this case in July 2023 after the court entered final judgment for Stern on his claim against Aistrup, the college's former Dean.

The court thus breaks its background into two parts: (a) the closed case between Stern and university officials and (b) the proposed intervenor case between Stern and two of his trial attorneys. For the latter section, unless otherwise noted, the court takes its facts from the attorneys' proposed complaint in intervention and assumes they are true.

### A.    The § 1983 action: Stern v. University Officials

Stern was the chair of the Economics Department within the College of Liberal Arts. Stern alleged that various university officials removed him from that position and denied him raises and pay supplements because Stern spoke publicly about the athletic department clustering athletes in the college's Public Administration major. (Doc. 47). As relief, Stern sought reinstatement as chair, compensatory and punitive damages, and attorney's fees and costs. *Id.*, pp. 54-55.

The court tried the case before a jury in November 2022. The jury found for all remaining defendants except Aistrup, the Dean of the College of Liberal Arts. The jury found that Aistrup retaliated against Stern and awarded Stern compensatory and punitive damages. (Doc. 193).

The court then heard Stern's case for reinstatement in June 2023. After a two-day bench trial, the court denied Stern's request to be reinstated as chair and instead awarded him supplemental back pay, front pay, and ordered the university to adjust his salary. (Doc. 247).

Ultimately, the court entered a final judgment that awarded Stern these amounts:

| | |
|---|---|
| Back Pay | $ 42,836.35 |
| Front Pay (based on lack of raise) | $ 1,113.34 |
| Front Pay (in lieu of reinstatement) | $ 72,723.33 |
| Nominal Damages | $ 1.00 |
| Punitive Damages | $ 500,000.00 |
| **Total** | **$ 616,674.02** |

(Doc. 251). At this court's order, the clerk closed the case the same day. *Id.*

But 'closed' is a tricky word. The Civil Rights Attorney's Fees Award Act, commonly called "Section 1988," allows the court to give the "prevailing party" in a § 1983 action "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). And Rule 54(d)(2) allows the prevailing party to seek fees and expenses 14 days *after* the court enters final judgment.

Stern was the prevailing party, so the court ordered Stern to move for attorneys' fees within 14 days. (Doc. 252). In that order, the court reiterated, "**This case remains closed.**" *Id.* Stern timely submitted his motion for fees, accompanied by declarations and time sheets for his trial attorneys—John D. Saxon, Alicia K. Haynes, and Cynthia F. Wilkinson—and their associates. (Docs. 254, 254-1). The court awarded Stern $795,765.47 in fees, $18,462.26 in litigation expenses, and $8,753.77 in costs. (Doc. 280). The university defendants gave checks that cover these amounts to Stern's original counsel, Saxon, who in turn deposited the checks into a trust account for Stern. (Docs. 296-98). The proposed intervenor action asks this court to decide how that money is to be divided among Stern and his attorneys.

## B.    The proposed intervenor action: Attorneys v. Stern

Again, unless otherwise noted, the court gets its facts from the proposed intervenor complaint (doc. 290-1) and assumes they are true.

### 1. The written agreement between Stern and Saxon

Stern retained Saxon to represent him in the § 1983 action. Both parties signed a written contingency fee agreement on April 4, 2018. (Doc. 278-1). In it, Stern agreed to pay Saxon "forty percent (40%) of any and all financial recovery, whether by settlement or suit, whether in the form of a fee award, jury verdict, arbitration award, settlement at mediation, interest, compensatory, punitive, or liquidated damages or other sums recovered." *Id.*, p. 2. Stern also agreed to pay a $2,500 retainer plus "any and all expenses incurred by the firm." *Id.* Stern agreed that his payment of 100% of expenses was not "dependent or contingent upon the outcome of the case." *Id.*

The written agreement allowed Saxon to associate additional counsel "solely within [his] discretion." *Id.*, p. 3. But that discretion came with a catch that creates a primary point of dispute between Stern and the associated attorneys, Haynes and Wilkinson: "Should this be done, however, it will not affect the above-stated fee arrangement, that is, there will be no additional fee or cost to the client." *Id.*

The agreement ends with this acknowledgment of understanding:

**XIII.   ACKNOWLEDGMENT OF READING AND UNDERSTANDING/ENTIRE AGREEMENT:**

I acknowledge that I have read and fully understand this agreement, and have had an opportunity to ask questions of, and have this agreement explained by, one or more of the attorneys of this firm. By my signature below, I confirm that I have read, understood, and agreed to the terms of the above agreement for legal services. This agreement constitutes the entire agreement between the parties and excludes outside or collateral agreements unless expressly noted, as follows: _____.

Signed this __4TH__ day of __APRIL__, 2018

*Id.*, p. 5. The court pastes this version of the written agreement—the only version submitted to the court—to show that no one has filled in the blank provided to memorialize an "outside or collateral agreement." *Id.*

## 2. The agreement to associate counsel

Saxon filed Stern's § 1983 lawsuit in September 2018. In March 2022, the court denied the defendants' motion for summary judgment on certain claims and set this case for trial starting October 31, 2022. (Docs. 122, 125).

Seven weeks before trial, Saxon met with Haynes to ask if she would help try Stern's case. Haynes told Saxon that she would not agree to the 60-40 contingency contract because she believed that sharing any part of a court-awarded fee would be "ethically questionable." (Doc. 290-1, ¶ 44). Haynes told Saxon that when she is brought in late in litigation, she typically agrees to keep her hours (and those of her associates and staff) and asks the court to award a fee that "would not be shared with the client." *Id.*, ¶ 45. "If the plaintiff did not prevail, she would not expect any fee." *Id.* She would, however, expect the client to reimburse her costs and expenses regardless of the outcome and to give her any portion of a court-ordered award of costs and expenses to cover any remaining balance. In Haynes' opinion, this arrangement would not produce an additional fee or cost to Stern and thus would not violate Saxon's written agreement.

Saxon agreed to Haynes' terms, subject to Stern's approval. Haynes filed a notice of appearance for herself and her firm (Haynes & Haynes) the same day. (Doc. 128).

Six days later, Haynes met with Saxon and Stern in her office. Haynes explained her conditions to Stern. Haynes told Stern that "she would be reimbursed by Stern for all of her costs and expenses, regardless of the outcome of the case; and if Stern was successful at trial, she would seek an attorneys' fee award from the district court as her only compensation." (Doc. 290-1, ¶ 54). Haynes also "specifically explained that she was not seeking a contingency fee from Stern." *Id.*, ¶ 53. Stern orally agreed to Haynes' conditions.[1]

Haynes immediately started to prepare for trial. She soon realized that the volume of work would require another attorney, so she asked Wilkinson

---

[1] Stern disputes Haynes' version of events, claiming that he would not have allowed Haynes and her firm "to participate had they disclosed their intention to be paid 100% of the fee awards." (Doc. 291, p. 7). Stern speculates that is why Haynes did not propose a change to the written fee contract. *Id.*

about joining Stern's trial team. Wilkinson agreed and filed a notice of appearance. (Doc. 154).

Later, Stern met with the three attorneys and asked how Wilkinson was being paid. Haynes and Wilkinson told Stern that Wilkinson would be paid like Haynes: "through court-awarded attorneys' fees, costs, and expenses." (Doc. 290-1, ¶ 60). Both explained that they were not seeking a contingency fee or any part of Stern's fee agreement with Saxon. Saxon "further clarified that Haynes was not part of the contingency contract between Saxon and Stern." *Id.*, ¶ 61. According to Haynes and Wilkinson, "Stern did not object to this arrangement or request that [they] enter into a contingent fee arrangement similar to the one he had with Attorney John Saxon." *Id.*, ¶ 63. Based on Stern's silence and acquiescence, [Haynes and Wilkinson] continued to work on [Stern's] case without compensation." *Id.*, ¶ 64.

Saxon, Haynes, and Wilkinson represented Stern at trial, at the hearing for reinstatement, and in post-trial motions. In fact, they still appear as Stern's counsel, having not moved to withdraw.

### 3. The § 1983 trial-related awards

After trial, the reinstatement hearing, and post-trial motions, the court awarded Stern $616,674.02. (Doc. 251). The university paid this amount to Saxon, who deposited it into Stern's trust account. Saxon took $7,000 to reimburse his unpaid expenses, then distributed 60% of the remainder to Stern and kept 40% for himself. Neither Haynes nor Wilkinson received any of the trial-related award.

### 4. The dispute over the § 1988 fee award

Once the court entered final judgment, the three trial attorneys worked on Stern's petition for fees, costs, and expenses. Haynes signed and filed the fee petition and bill of costs. (Docs. 253-54). Combined, Stern asked for $1,247,061.25, with $531,955 attributed to Haynes, $431,485.50 attributed to Saxon, and $ 283,620.75 attributed to Wilkinson. (Doc. 254-15).

As you can see, the requested § 1988 award ($1.247 million) more than doubled the $616,674.02 Stern received from trial and then split 60-40 with Saxon. So Stern hired new attorneys, who told Stern's trial attorneys that

Stern believed he was entitled to 60% of any fee award. Stern contended that, under this provision of Stern's contract with Saxon, the fee award belonged to Stern, and Stern was required to pay 40% of the fee award to Saxon:

> I, Dr. Michael L. Stern . . . agree to pay the firm of John D. Saxon for services rendered therein forty percent (40%) of any and all financial recovery, whether by settlement or suit, whether in the form of a fee award, jury verdict, arbitration award, settlement at mediation, interest, compensatory, punitive, or liquidated damages or other sums recovered.

(Doc. 278-1, p. 2) (highlight added). Stern further contended that, if Saxon associated counsel, the contract dictated that they would be paid out of Saxon's 40%, not Stern's 60%, because the association clause said that Saxon's decision to associate would not affect the 60-40 fee arrangement:

> Should the law firm of John D. Saxon, P.C. find it necessary or desirable to associate additional counsel, that decision will be solely within the attorneys' discretion. Should this be done, however, it will not affect the above-stated fee arrangement, that is, there will be no additional fee or cost to the client.

*Id.*, p.3. To protect their interests, all three attorneys filed a statutory lien under Alabama law and made a claim for fees and costs on those liens. (Docs. 269-70). Haynes claimed $488,329.51; Wilkson claimed $288,891.33; and, Saxon claimed $172,594.20. *Id.* Both Stern and the university defendants asked the court to strike or deny the claims. (Docs. 271, 278, 279).

The court awarded Stern $795,765.47 in fees, $8,753.77 in costs, and $18,462.26 in expenses. (Doc. 280). The court ended its fee order by finding that it could exercise supplemental jurisdiction over the lien claims because, under circuit precedent, "[t]he existence of an attorney's lien against a party's recovery in a lawsuit is part of the same case or controversy as the underlying lawsuit." *Id.*, p. 40, quoting *Moreno Farms, Inc. v. Tomato Thyme Corp.*, 490 F. App'x 187, 188 (11th Cir. 2012) (citing *Broughten v. Voss*, 634 F.2d 880, 383 (5th Cir. 1981)). But the court declined to hear the lien claims because (a) state courts should decide common law questions about contracts, and (b) it was

unfair to force the university defendants to continue monitoring the (closed) case after they paid all adverse awards. *Id.*, pp. 40-41.

### 5. The motion to intervene and proposed complaint

Stern moved to modify the court's fee award (doc. 283), a motion the court ultimately denied (doc. 295). While the motion to modify was pending, Haynes and Wilkinson moved to intervene against Stern under Rule 24(a)(2). (Doc. 290). They say that, while Stern has paid Saxon his costs plus 40% contingency, Stern has not fully reimbursed them for their expenses, nor has Stern given them *any* of the fees attributable to their work. They argue that this federal court should decide their dispute over § 1988 fees because (a) § 1988 is a federal statute and (b) it would take too long for state courts to learn and deal with the facts of this case—a case this court knows well.

As required by Rule 24(c), the attorneys attached a proposed complaint in intervention. (Doc. 290-1). It pleads three counts. To invoke the court's federal question jurisdiction, Count I asks the court to declare either that (a) § 1988 requires defendants to pay any fee award directly to the attorneys if the client has yet to pay them or (b) § 1988 prohibits a prevailing party from receiving any portion of a § 1988 fee award if he has yet to pay fees to his attorneys.[2] *Id.*, p. 20. The remaining counts ask the court to exercise its supplemental jurisdiction to decide under Alabama law either that Stern has breached his oral contract with Haynes and Wilkinson (Count II) or that Stern breached an implied contract with Haynes and Wilkinson and thus owes them part of the § 1988 fee award under quantum meruit (Count III).

In Part III, the court explains why Rule 24(a)(2) does not give the attorneys a right to intervene. But first, the court discusses an issue of federal law that drives its analysis of the attorneys' motion and proposed intervenor complaint: While the attorneys' work is the basis of the § 1988 fee award, the award *belongs* to Stern, unless Stern agreed on terms to give it to the attorneys. And that caveat generates questions of state, not federal, law.

---

[2] Count I includes four other requested declarations, each of which essentially ask the court to decide disputed facts then declare that the attorneys are entitled to receive the § 1988 fee award under state contract law. These requested declarations are similar to the state-law claims pleaded in Counts II and III, so the court mentions these proposed declarations no further.

## II.

### Possession of § 1988 fees

A jury found that Aistrup violated 42 U.S.C. § 1983 when he removed Stern as chair of the Economics Department and failed to increase his pay. Section 1988(b) says that, in a § 1983 case, "the court, in its discretion, may allow the ***prevailing party***, other than the United States, a reasonable attorney's fee as part of the costs." (emphasis added). Read plainly, Section 1988 allows the court to award a fee to the "prevailing party," not his attorneys. So the court awarded all fees, expenses, and costs to Stern, not his attorneys. (Doc. 280). And when the dispute broke out between Stern and his attorneys, the court ordered the university to pay the money to Saxon's trust account for Stern so that Stern would constructively possess the money until the dispute was settled, as required by Rule 1.15(c) of Alabama's Rules of Professional Conduct. (Doc. 296, pp. 1-2).

1. *SCOTUS*: The Supreme Court reads § 1988 the same way:

> [T]he language of the Act, as well as its legislative history, indicates that Congress bestowed on the 'prevailing ***party***' (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees in specified civil rights actions. It did not prevent the party from waiving this eligibility any more than it legislated against assignment of this right to an attorney[.] . . . . While it is undoubtedly true that Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights, it neither bestowed fee awards upon attorneys nor rendered them nonwaivable or nonnegotiable[.]

*Evans v. Jeff D.*, 475 U.S. 717, 730–32 (1986) (footnotes omitted) (emphasis in original). Because a § 1988 fee award belongs to the plaintiff, not the attorney, the Court held in *Evans* that a plaintiff can waive his right to file a claim for fees under § 1988 as part of a settlement with the defendant, even if that means his attorney recovers no fee for his work. *Id.* at 730–38.

The Court later dealt with the interaction between contingency fee contracts and § 1988 fee awards in *Venegas v. Mitchell*, 495 U.S. 82 (1990). Plaintiff Mitchell signed a 60-40 contingency contract with attorney Mitchell. The contract said Mitchell would receive 40% of the gross amount of any recovery and could seek a fee award, but the fee award must be used to offset the 40% contingency recovery. When Mitchell's § 1988 fee award ($75,000) was less than his contingency fee on the judgment ($406,000), Mitchell filed a lien on the judgment and a motion to intervene under Rules 24(a)(2) and 24(b), seeking to recover the $406,000 contingency. While the lower courts disagreed about Mitchell's intervention under Rule 24, they agreed that Mitchell could claim the contingency award, even though it exceeded the fee award.

The Supreme Court affirmed. Unfortunately, the Court did not resolve the disagreement about how attorney Mitchell could enforce his contingency contract with Venegas—*i.e.*, filing a lien claim in state court (the district court's view) or permissive intervention in federal court under Rule 24(b) (the circuit court's view). Instead, the Court reaffirmed that § 1988 fee awards belong to the party and so "as § 1988 is concerned, it is the party's right to waive, settle, or negotiate that eligibility." *Id.* at 88–89. The court added that § 1988 awards "can coexist with private fee arrangements" like contingency contracts. *Id.* at 88. The Court concluded:

> In sum, § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order. Section 1988 itself does not interfere with the enforceability of a contingent-fee contract.

*Id.* at 90. The Supreme Court thus affirmed the Ninth Circuit's decision, which was to remand for the district court "to act on the merits of Mitchell's motion to confirm a lien on the recovery." *Id*. at 86.

2. *CA11*: The Eleventh Circuit has also said that fee awards belong to the party, not the attorney, and applied that rule when dealing with disputes like this. For example, in *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506

(11th Cir. 1988), attorney Richard Ebbinghouse filed a case for Panola, a non-profit housing corporation. Ebbinghouse represented Panola for four years, and he helped Panola defeat an adverse ruling on summary judgment on appeal and get Panola's case set for trial. Before trial, the parties negotiated a settlement that would waive Ebbinghouse's right to seek a fee award under the Equal Access to Justice Act ("EAJA"). Ebbinghouse objected to the provision. But his client agreed and thus dismissed Ebbinghouse as its attorney and signed the settlement agreement.

Like the attorneys here, Ebbinghouse moved to intervene under Rule 24(a)(2), seeking either to claim fees under the EAJA or to enforce a lien on Panola's recovery. The district court denied the motion, and the circuit court affirmed. As for intervention of right under Rule 24(a)(2), the circuit court said that "[i]t is readily apparent that the party eligible to recover attorney's fees under the EAJA as part of its litigation expenses is the prevailing party." *Id.* at 1509. Because Panola—not attorney Ebbinghouse—had the right to seek or waive EAJA fees, the court found that Ebbinghouse didn't have a legally protected interest in whether the district court would award an EAJA fee. *Id.* at 1509–1511. The court thus ruled that Ebbinghouse had no right to intervene under Rule 24(a)(2). The court then noted that while district courts *can* enforce state-law lien claims, Ebbinghouse had no such claim because Panola recovered no money that a lien could attach to. *Id.* at 1514.

In a more recent unpublished opinion, the circuit court found that attorneys in an Americans with Disabilities Act ("ADA") case who sought to intervene after their client died, lacked standing to apply for attorney's fees. *See Long v. Morton Plant Hosp. Ass'n, Inc.*, 265 F. App'x 798 (11th Cir. 2008). The court held that under the ADA's fee-shifting provision, which includes nearly identical language to §1988, the "Intervenors had no personal claim to [the] fees." *Id.* at 800. Instead, only their client or his estate had standing to seek a fee award. *Id.* And because no timely substitution of parties was made after their client's death, there was no "justiciable claim to fees for Intervenors to pursue." *See id.*

—

To sum up, the attorney's fee this court awarded under § 1988 belongs to Stern, not his attorneys, based on § 1988(b)'s plain language, the interpretation of that language by the Supreme Court, and the interpretation of similar fee-shifting language by the Eleventh Circuit. While none of the cited cases is directly on point, and thus do not dictate the outcome here, they do stand for one proposition that leads to the outcome: Neither § 1988 nor any other federal statute or rule gives Haynes or Wilkinson a legally protected interest in Stern's fee award. If they have a right to part of Stern's fee award, that right stems from Stern agreeing to give them part of his award under state law, or from some other state-law vehicle that forces a client to pay for services rendered without an express contract (*e.g.*, quantum meruit).

## III.

### Rule 24(a)(2): Intervention of Right

Haynes and Wilkinson argue that Rule 24(a)(2) gives them the right to intervene as parties to litigate their fee dispute with Stern. Rule 24(a)(2) says:

> On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

As you can see, Rule 24(a) prevents the court from "disposing of the action" before non-parties can intervene to protect their interest "in the property or transaction that is the subject of the action," just as Rule 19(a) requires joinder of a non-party whose "interest relating to the subject of the action" could be impaired or impeded by "disposing of the action in the person's absence." Together, Rules 19 (joinder), 23 (class action), and 24 (intervention) ensure that everyone with an interest in the subject of the case has his interest adequately represented before rights on that interest are determined and the action ends. *See* Charles Alan Wright & Arthur Miller, 7C *Federal Practice and Procedure* § 1901 (3d ed. June 2024 update); Fed. R. Civ. P. 24, Advisory

Committee Notes (noting that intervention of right "a kind of counterpart to Rule 19(a)(2)(i) on joinder of persons needed for a just adjudication").

Haynes and Wilkinson do not need Rule 19 or 24 to protect their interest in Stern's fee award from being impaired by a negative judgment. No party is litigating the ownership of Stern's fee. Stern has not asked the court to do so, and the defendants have fulfilled all of their obligations to Stern under the court's orders and final judgment and have thus been released from the case.

In short, this case is closed. And because no party timely appealed the court's final judgment or post-judgment fee award, it cannot be reopened. So there is no opportunity for an existing party to litigate to judgment the ownership of Stern's § 1988 fees, meaning there is no reason for Haynes and Wilkinson to be joined as parties under Rule 19 or to intervene under Rule 24. Haynes and Wilkinson can thus file a new action against Stern without fear that the "disposal of [this] action" will negatively impact their new action.

That should end the matter. And it would, but for a pair of pre-split Fifth Circuit decisions that read Rule 24(a) to require district courts allow attorneys to intervene in their client's case to argue fees. So the court elaborates on why the attorneys cannot satisfy the text of two of Rule 24(a)(2)'s requirements (*i.e.*, interest and impairment), then explains why the Fifth Circuit precedent that held otherwise does not bind this court.

### A. No interest related to this action

Rule 24(a)(2) requires Haynes and Wilkinson to possess an "interest relating to the property or transaction that is the subject of the action[.]" They cannot meet this requirement for two reasons.

1. *The subject of the action*: The attorneys claim their interest is in §1988 attorneys' fees. But attorneys' fees were not "the property or transaction that is the subject of the action." As explained in the Background section, this was a § 1983 action in which Stern sought redress for a First Amendment violation. The "transaction that is the subject of the action" was therefore the act that violated the First Amendment—*i.e.*, the defendants removing Stern as chair and refusing to give him raises and pay supplements because Stern spoke negatively about the clustering of athletes.

Stern's attorneys had no interest in the "transaction that is the subject of the action" (*i.e.*, Aistrup's retaliation) while the action was pending. If they had, they would have recused from representing Stern to avoid a conflict of interest and either been joined as parties under Rule 19(a)(1)(B)(i) or sought intervention as parties under Rule 24(a)(2) to protect their interest.

Nor could § 1988 fees be "the property or transaction that is the subject of the action" because, by rule, the prevailing party does not move for fees until 14 days **after** the parties' interests in the subject of the action are decided by entry of final judgment. Fed. R. Civ. P. 54(d)(2)(B). That's why the Supreme Court has held that a motion for fees under § 1988 is not a motion to alter or amend the judgment under Rule 59(e); rather, "a request for attorneys' fees under § 1988 raises legal issues collateral to" and "separate from" the decision on the merits. *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 451-452 (1988). It's also why the Supreme Court has twice held that a court's decision on fees after entry of final judgment does not alter finality for purposes of appellate jurisdiction under 28 U.S.C. § 1291, *see Ray Haluch Gravel Co. v. Cent. Pension Fund of Intern. Union of Operating Engineers and Participating Employers,* 571 U.S. 177 (2014); *Budinich v. Becton Dickson and Co.*, 486 U.S. 196 (1988), thus making Civil Rule 58(e) and Appellate Rule 4(a)(4)(A)(iii) necessary to extend the time allowed to file a notice of appeal in a case involving a post-judgment award of attorney's fees.

As the Court put it when deciding that the district court made a "final decision" when it entered final judgment before awarding attorney's fees:

> As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action.

*Budinich*, 486 U.S. at 200.

In short, the attorney's fees this court awarded under § 1988 are not the "property or transaction that [was] the subject of the action." They are the fruits of a "collateral" issue that was "separate from" the action. *White*, 455

U.S. at 451-452. As a result, the attorneys have no right to re-open and join this closed action as parties under Rule 24(a)(2).

2. *Legally protectable interest*: Let's assume the court is wrong, and § 1988 fee awards must be considered "property . . . that is the subject of the action" as required by Rule 24(a). The attorneys must also show that their interest in the fees "is a direct, substantial, *legally protectable* interest in the proceedings." *Panola*, 844 F.2d at 1509 (quotations omitted).

As explained in Part II, § 1988 fees belong to the prevailing party, not his attorneys. That's why the Eleventh Circuit affirmed the district court's denial of attorney Ebbinghouse's Rule 24(a)(2) motion to intervene in *Panola*: "Examination of the language and purpose of that source and of the history of Federal fee-shifting statutes makes it clear that the EAJA does not afford Ebbinghouse party status to assert a legally protectable right. It is readily apparent that the party eligible to recover attorney's fees under the EAJA as part of its litigation expenses is the prevailing party." *Id.* To be sure, *Panola* dealt with the EAJA, which contains a similar but distinct fee-shifting statute, so *Panola* is not binding here. And as explained later, *Panola's* legal reasoning conflicts with pre-split Fifth Circuit decisions. *See Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970); *Gilbert v. Johnson*, 601 F.2d 761, 767 (5th Cir. 1979).

But *Panola* is more persuasive than the Fifth Circuit cases, in part because the Eleventh Circuit examined the Supreme Court's decision in *Evans*, a case involving § 1988 fees, while the Fifth Circuit did not because the Fifth Circuit cases pre-date *Evans* and involved contingency agreements, not fee-shifting statutes. *Panola*, 844 F.2d at 1513. Following *Panola's* lead, this court finds that Stern alone possesses a "direct, substantial, *legally protectable* interest" in the § 1988 fee award. *Id.* at 1509. So only Stern can cite § 1988 as the source of a protectable interest that is a subject of the action, as required by Rule 24(a)(2). Of course, the attorneys may also have a legally protectable interest in the fees. But that interest would arise from a contract with Stern, not § 1983 or § 1988. Because the fee agreement between Stern and his attorneys (if any) is not the subject of this action, it cannot trigger Rule 24(a)(2).

15

**B. No impairment of the ability to protect interest**

If the attorneys could point to a legally protectable interest in Stern's fee award, Rule 24(a)(2) next requires them to show that "disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest" in the fees. The attorneys argue that denying their motion to intervene and forcing them to file a new case in state court, as the court suggested when declining to hear their claims on attorney's liens, would impair or impede their interest in securing the fees for two reasons: (1) § 1988 is a federal statute, so federal law would govern their fee dispute, and (2) starting from scratch in state court would take more time than resolution in this federal court with the judge who presided at trial and awarded the fees. (Doc. 290, pp. 13-14). The court addresses their arguments in reverse order.

a) *Timeliness*: For starters, delayed resolution is not what Rule 24(a)(2) means by impairing or impeding an outsider's "ability to protect [his] interest." Speed isn't the point; the point is ensuring that the outsider's interest is adequately represented before the parties' rights are determined, as proved by the caveat: "unless existing parties adequately represent that interest."

But even if speed were the point, this court stands in no better position to push the attorneys' fee dispute than another court. Yes, the undersigned has presided over this case for nearly three years, so I am more familiar with the parties. And as you'll see in the next section, the court already understands the arguments on both sides—and their implications.

But the attorneys' proposed case will start from square one in any court, including this one. The attorneys have yet to file their complaint against Stern. That means Stern has yet to file his response, which could be an answer, an answer plus a counterclaim, and/or a motion to dismiss. The parties have not exchanged initial disclosures or held a Rule 26(f) conference or submitted written discovery requests. Nor have the parties been deposed. Nor do we know if Stern or any party that he brings into the dispute will request a jury. In short, the attorneys' proposed complaint previews a new case that will require the court—be it state or federal—to start the process from the ground up. So the attorneys cannot show that denying their Rule 24(a) motion will impede or impair their ability to get timely relief.

b) *Federalism*: Nor are the attorneys correct that their proposed case is governed by federal law. To the contrary, Count I presents the only federal question: Should this court declare either that (a) § 1988 requires the university defendants to pay any fee award directly to the attorneys because Stern has yet to pay them or (b) § 1988 prohibits Stern from receiving any portion of the §1988 fee award because Stern has yet to pay fees to his attorneys? (Doc. 290-1, p. 20). These questions may be moot, as the court has already ordered the defendants to pay the § 1988 fee award to Stern (doc. 296), and the defendants complied by paying the fees to Saxon, who is holding the money for Stern in Stern's trust account (docs. 297, 298). And even if Stern's receipt of the fees doesn't moot the requested declarations, at the risk of prejudging the issue, the court has already explained in Part II that § 1988's plain language and Supreme Court precedent *required* the court to award the § 1988 attorney's fees, costs, and expenses to Stern, not his attorneys.

Whether Stern owes some or all of his award to Wilkinson and Haynes is a state-law question based on an express contract (Count II) or an implied contract (Count III). Presiding over Stern's § 1983 case puts this court in a better position to answer only one part of one of those state-law questions: What is the reasonable value of the attorneys' work if quantum meruit applies? But the court has already answered that question in its 41-page order granting fees, costs, and expenses (doc. 280), and the court came to its numbers by applying essentially the same ABA-based 'Peebles factors' Alabama courts use when determining reasonable fees in a quantum meruit case. *See, e.g.*, *Triplett v. Elliott*, 590 So. 2d 908, 909-10 (Ala. 1991); *Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton*, 554 So. 2d 445 (Ala.Civ.App.1989); *Peebles v. Miley*, 439 So. 2d 137, 140-41 (Ala. 1983). As explained in that order, Haynes and Wilkinson brought significant experience and expertise into a complex case that could have gone either way, and their performance at trial helped Stern prevail.

Assuming the state court trusts this court's judgment about the attorneys' performance and the reasonableness of the fee award, then this court has no better footing to answer the bevy of state-law questions that the attorneys' proposed complaint, and Stern's response, portend:

- Does Alabama law or public policy allow Stern and Saxon to split the § 1988 fee award?
- Does the written contract between Stern and Saxon require any "outside or collateral agreements" with associated attorneys to be written in the blank at the end of the contract? If yes, are Stern's agreements with Haynes and Wilkinson void because they were not mentioned in the Saxon contract or recorded elsewhere?
- Could Stern orally agree to pay Haynes differently than his written agreement with Saxon required?
- Did Stern's "silence and acquiescence" to adding Wilkinson to the trial team, *see* Proposed Complaint ¶ 64, form a binding agreement on the terms of Wilkinson's payment?
- Did Haynes and Wilkinson enter a contingency agreement, a fixed fee agreement, or some other type of agreement when they agreed not to accept any payment from Stern unless Stern prevailed at trial and asked for fees as the "prevailing party?"
- If Stern's agreement with Haynes and Wilkinson was contingent, does Alabama common law or the ARPC require that agreement to be in writing to be enforceable?
- Can courts consider the ARPC when ruling on the enforceability of an attorney's fee agreement with her client?
- If Haynes and Wilkinson (combined) seek more than 40% of Stern's recovery, can Stern counterclaim against Saxon for violating the terms of the written contract?
- If Haynes and Wilkinson take more than 40% of Stern's recovery, do the ARPC require Saxon to repay part of his recovery?
- Do any of the parties' claims provide the right to a jury trial?

The court could list more state-law questions, and it could cite the state appellate decisions, state rules of professional conduct, and state bar opinions that spawned each of the questions above. But it won't, for the same reason it chose not to list these state-law questions the first time the attorneys asked this court to get involved: Decisions that impact the relationship between a state's plaintiffs' bar and its clients should be made by that state's courts and its state bar, not federal district courts.

## C. No binding precedent

As mentioned, only a pair of Fifth Circuit decisions from the 1970s cloud an otherwise plain prescription against using Rule 24(a)(2) to re-open this case to settle an attorney's fee dispute. Because Fifth Circuit opinions issued before October 1, 1981, are binding on this court, *see Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), and the attorneys argue the earliest decision (*Gaines*) is binding, the court must address them more fully below.

1. *CA5 cases*: The first decision is *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52 (5th Cir. 1970). Plaintiff Gaines hired the Plotkin law firm on a contingency fee contract. During the litigation, Gaines replaced the Plotkin firm against its will and (according to the firm) without cause. The Plotkin firm filed a Rule 24(a)(2) motion to intervene during the litigation to protect its interest. Armed with new counsel, Gaines settled for $40,000, keeping about $26,000 for himself and placing the other $14,000 in the court's registry because of the outstanding fee dispute. The district court denied the firm's motion to intervene, but the Fifth Circuit reversed, finding (a) that the Plotkin firm "claimed an interest in the subject of the action" and (b) denying the firm's motion would impair or impede its ability to protect that interest. *Id.* at 54. In the next paragraph, the circuit court noted that "the matter may be quickly and efficiently proceeded with on remand" because the district court possessed the disputed money. *Id.*

Next came *Gilbert v. Johnson*, 601 F.2d 761 (5th Cir. 1979). Plaintiff Gilbert hired attorney Lowe to represent him in a case against the VA. Gilbert later decided to change counsel, and the district court granted Lowe's motion to withdraw. But the court denied Lowe's motion to intervene to assert a state-law lien claim. The circuit court reversed, finding that it could not distinguish the case from *Gaines*. *Id.* at 767.

Both decisions have been criticized by the Fifth Circuit—even by one of the judges who decided *Gilbert*. *See Gilbert*, 601 F.2d at 767-68 (Rubin, J., concurring); *Keith v. St. George Packing Co.*, 806 F.2d 525, 526 (5th Cir. 1986). And courts within the circuit have limited the holdings of *Gaines* and *Gilbert* to their facts. *See Valley Ranch Dev. Co. v. FDIC*, 960 F.2d 550, 556 (5th Cir. 1992) (Not extending *Gaines* to case in which plaintiff's current attorney

sought to intervene); *Alam v. Mae*, 2007 WL 4411544, at *4 (S.D. Tex. Dec. 17, 2007) (Not extending *Gaines* and *Gilbert* to case in which law firm who represented plaintiff in unrelated matter sought to intervene).

That said, *Gaines* and *Gilbert* have not been overruled, and they are panel decisions that pre-date the seemingly contrary Eleventh Circuit panel decision in *Panola* that attorneys lack the requisite legally protectable interest in attorney's fees awarded under the EAJA. So the court must determine whether *Gaines*, the earliest of the panel opinions, binds the court here.

2. *Ratio decidendi*: The attorneys are right that the legal rule implied by *Gaines* would require the court to permit intervention here. But the court finds that *Gaines* does not bind this court because *Gaines* involved three legally salient facts not present here. *See Ramos v. Louisiana*, 590 U.S. 83, 104 (2020) ("It is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases."); Lawrence B. Solum, *Originalist Theory and Precedent: A Public Meaning Approach*, 33 Const. Comment. 451, 459 (2018) (describing a decision's holding under *ratio decidendi* as "the rule that is logically entailed by the reasoning that was necessary to reach the outcome on the basis of the legally salient facts and the arguments of the parties").

First, in *Gaines*, the plaintiff's case was active when the Plotkin firm was discharged; the firm moved to intervene; the district court denied the motion; and the firm appealed. 434 F.2d at 53-54. The parties settled the case while the firm's appeal was pending, and all parties—including the Plotkin firm— agreed to give the disputed monies to the court's registry. *Id.* at 54. When Gaines argued on appeal that intervention was inappropriate because his case was closed, the Fifth Circuit said that the $14,000 held by the district court "must be allocated as law and justice require" and that distribution of court-held money was "sufficient" to keep the case open for parties to intervene and claim the money. *Id.* In other words, as long as the court held the money, the case couldn't close. That salient fact is absent here. Stern (through Saxon) holds the money, not the court. And no party appealed any of the court's rulings on the merits or its fee award. So unlike *Gaines*, this case is closed, and the court holds no key to reopen it.

Second, the attorney seeking party intervention in *Gaines* and *Gilbert* had formally terminated his representation of the client and withdrawn from the case, thus avoiding the conflict that would arise by having the client and his attorney appear as opposing parties in the case. Recognizing that it said that attorneys have the requisite interest in fees to intervene against their clients in *Gaines* and *Gilbert*, the Fifth Circuit nevertheless affirmed a district court's denial of an *active* attorney's motion to intervene to avoid a state-law conflict of interest between the attorney and his client. *See Valley Ranch*, 960 F.2d at 556. The same fact distinction exists here. Haynes and Wilkinson have not withdrawn as Stern's attorneys, and they have continued to represent Stern after the dispute arose. So granting their motion to intervene as parties in this case (Case No. 3:18-cv-807) would pit them against their own client, creating a conflict of interest.

Third, the attorneys' interest is different. In *Gaines*, the Plotkin firm had a contingency contract that said (a) Gaines could not settle his Jones Act and maritime injury claims without the firm's written consent and (b) the firm was entitled to one-third of the money Gaines recovered if he settled those claims. 434 F.2d at 53. So the firm's interest was (at least in the circuit's view) based "in the subject of the action." *Id.* at 54. The discharged attorney in *Gilbert* also had a contingency agreement, hence the court following *Gaines*. *See* 601 F.2d at 767-68 (Rubin J., concurring) (explaining why *Gaines* was wrong but binding based on the facts). The same is not true here. Haynes and Wilkinson allege that they expressly disavowed any interest in Saxon's contingency agreement and told Stern they wanted no part of his recovery stemming from his First Amendment claim. So they do not possess the same interest in "the subject of the action" that the Fifth Circuit found sufficient under Rule 24(a). Rather, Haynes and Wilkinson claim an interest in a post-judgment fee-shifting award, a distinct interest that the Eleventh Circuit has held is not sufficient under Rule 24(a). *See Panola*, 844 F.2d at 1509–1511; *Long*, 265 F. App'x at 800.

In sum, three legally salient facts necessary to the outcome in *Gaines* are not present here, so *Gaines* is not binding here. Because the court disagrees with *Gaines* and *Gilbert's* reading of Rule 24 (as have others), it will not follow them. Instead, the court follows the plain language of Rule 24(a)(2) and the Eleventh's Circuit's rationale in *Panola*.

—

In denying the attorneys' motion, the court neither takes nor suggests any position on the fact and legal questions that lie ahead, except to affirm the court's earlier determination that the amount it awarded Stern under § 1988 is reasonable based on his attorneys' expertise, time worked, and results.

Rather, the court's decision enforces the Supreme Court's reading of 42 U.S.C. § 1988: "as § 1988 is concerned, it is the party's right to waive, settle, or negotiate" his fee award. *Venegas*, 495 U.S. at 88. Whether Stern agreed to give some or all of his § 1988 fee award to Haynes and Wilkinson for their work is a state-law question best left to the state courts.

## CONCLUSION

For these reasons, the court **DENIES** the motion to intervene (doc. 290). This case remains **CLOSED**.

**Done** and **Ordered** on January 28, 2025.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE